Elizabeth Hanford **DOLE,**\* Secretary of Labor, Petitioner–Appellee,

v.

John **MILONAS,** Respondent–Appellant.

No. 88–1920.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 14, 1989.

Decided Nov. 15, 1989.

---

\* Elizabeth Hanford Dole is substituted for her predecessor Ann McLaughlin, as Secretary of Labor, pursuant to F. R. App. P. 43(c)(1).

Jeffrey B. Neustadt, San Francisco, Cal., for respondent-appellant.

Karen L. Handorf, Office of the Solicitor, U.S. Dept. of Labor, Washington, D.C., for petitioner-appellee.

Before GOODWIN, Chief Circuit Judge, REINHARDT, Circuit Judge, and TASHIMA, District Judge.[**]

TASHIMA, District Judge:

This is an appeal from an order enforcing an administrative subpoena issued by the Secretary of Labor (the "Secretary") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* We affirm in part, reverse in part and remand with directions.

[**] Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

[1] According to the subpoena, appellant is a sole practitioner and the exclusive provider of legal services to participants of the Fund. For the year 1986 he was paid $112,000 by the Fund.

[2] As is true in most cases, the subpoena here appears to have been drafted in as broad a fashion as possible. The "Definitions" in the subpoena provide:

1. The term "document" or "documents" means writing of any nature whatsoever within the possession, custody or control of John E. Milonas, Attorney at Law, including but

## BACKGROUND

Appellant, an attorney, is a service provider [1] to the Santa Clara County [California] Bartenders Culinary Workers Group Legal Fund (the "Fund"), which is a welfare benefit plan governed by ERISA. Eligible participants and beneficiaries of the Fund are members of Local No. 19 of the Hotel, Motel, Restaurant Employees and Bartenders and Culinary Workers Union and their dependents. In the course of an investigation of the Fund, the Secretary, acting through her Area Director of the Pension and Welfare Benefits Administration, issued a subpoena *duces tecum* requiring appellant to produce certain records relating to his work for the Fund. The "Documents to be Produced" were described in the subpoena, which was issued on October 27, 1987, as follows:

1. All documents relating to the provision of legal services by John E. Milonas to participants and their dependents of the ... Fund for the period December 30, 1985 to the present. This is to include the names of all persons who were provided services by John E. Milonas for the same period.

2. Expressly excluded from production are any documents requested herein that have been previously produced since the commencement of the investigation by this Office.

The subpoena was accompanied by a letter which, at least implicitly, recognized that some of the documents within the call of the subpoena might be privileged.[2] That

not limited to contracts, agreements, correspondence, memoranda, reports, ledger books, summaries or records of personal conversation or interviews, notes, drafts, copies, analytical records, minutes or records of meetings or conferences, legal pleadings, checks, bank statements, lists, journals, computer tapes and cards, and all other written, printed, recorded, or photographic matter or sound reproductions, however produced or reproduced.

2. The term "relating to" means constituting, relating to, referring to, pertaining to, or containing any information which in any way concerns, affects, or describes the terms or conditions, or identifies facts, with respect to the subject of the inquiry.

letter described the procedure to be followed with respect to any document as to which the attorney-client privilege was invoked.[3] Appellant refused to produce any documents. The Secretary then petitioned the district court to enforce the subpoena. The district court ordered production of "the following documents requested in the subpoena:"

(a) Documents reflecting the names, addresses and telephone numbers of the participants in the ... Fund to whom respondent [appellant] has provided legal services; and

(b) Documents reflecting the nature and extent of the services rendered by respondent [appellant] to each of the participants whose names are provided pursuant to (a) above.

This appeal followed.

## ISSUES

1. Whether the documents ordered to be produced are protected by the attorney-client privilege.

2. Whether the district court abused its discretion in not issuing a protective order limiting use of the documents it ordered appellant to produce.

## DISCUSSION

The Secretary is charged with the enforcement of Title I of ERISA, which governs the conduct of fiduciaries and others in connection with welfare benefit plans covered by ERISA. In performing this function, the Secretary is vested with broad investigatory powers to determine "whether any person has violated or is about to violate" any provision of Title I. 29 U.S.C. § 1134(a). Section 1134(c) of that title also makes §§ 9 and 10 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 49 and 50, relating to compelling the attendance of witnesses and the production of documents at investigatory proceedings, applicable under ERISA. The incorporated FTC Act provisions authorize the Secretary to petition for enforcement of her ERISA Title I subpoena in district court. Thus, the district court had jurisdiction under the FTC Act, 15 U.S.C. § 49, as incorporated into ERISA, 29 U.S.C. § 1134(c). The order was final and we have jurisdiction under 28 U.S.C. § 1291.[4]

### I. *Attorney–Client Privilege.*

■ Appellant claims that all of the documents which the district court ordered produced are covered by the attorney-client privilege. On the other hand, the district court appears to have concluded that the privilege did not apply at all.[5] Both positions are erroneous.

■ Whether or not a given communication or information is protected by the

---

3. The letter provided:
   If any documents are withheld because of a claim of attorney-client privilege, the list of withheld documents should identify:
   (a) the attorney and client involved;
   (b) the nature of the document (i.e., letter, memorandum);
   (c) all persons or entities shown on the document to have received or sent the document;
   (d) all persons or entities known by Mr. Milonas to have been furnished the document or informed of its substance; and
   (e) the date the document was generated, prepared or dated.

4. The district court stayed its order pending this appeal.

5. This is apparent from a series of statements by the court at the hearing on the petition to enforce the subpoena:
   How can you have an attorney-client privilege when he is providing services—he's providing services to individuals and being paid by someone else? Who's his clients?
   (Rep. Tr. at 13.)
   And they're doing it for people who are part of the Fund. You can't have an attorney-client privilege in a situation like that. And besides, the attorney-client privilege is the client's privilege, not the lawyer's.

   •    •    •    •

   And I find there's no attorney-client privilege, because this investigation is being conducted for the benefit of the client that he was supposed to have been servicing.
   (Rep. Tr. at 14.) The existence of an attorney-client relationship and privilege is not dependent on the supposed client himself or herself paying the attorney. The relationship and the privilege may exist even though the attorney's fees are paid by a third person. *See In re Shargel,* 742 F.2d 61, 64–65 (2d Cir.1984) (discussing conditions under which payment of attorney's fees by third-party benefactor is proper); *see also In re Grand Jury Subpoenas,* 803 F.2d 493, 498 (9th Cir.1986).

attorney-client privilege is a mixed question of law and fact and is subject to *de novo* review. *E.g., Tornay v. United States,* 840 F.2d 1424, 1426 (9th Cir.1988). And the party asserting the privilege has the burden of showing that it applies in the circumstances. *Id.* The district court's order required that two categories of documents be produced. Each will be discussed in turn.

### A. Identity of Clients

■ Appellant concedes that the general rule is that identity of an attorney's clients is not a matter within the attorney-client privilege. *United States v. Sherman,* 627 F.2d 189, 190 (9th Cir.1980); *United States v. Hodge and Zweig,* 548 F.2d 1347, 1353 (9th Cir.1977).[6] However, he contends that his clients' identities should be protected from disclosure under the rule of *Baird v. Koerner,* 279 F.2d 623 (9th Cir.1960). In *Baird,* the government sought disclosure from an attorney of the name of his client on whose behalf the attorney had (without identifying the client) tendered payment of back income taxes. The court held that the general rule did not apply and that the client's identity was protected from disclosure. *Id.* at 633. *Baird* was later explained in *In re Osterhoudt,* 722 F.2d 591 (9th Cir.1983):

> The principle of *Baird* was not that the privilege applied because the identity of the client was incriminating, but because in the circumstances of the case disclosure of the identity of the client was in substance a disclosure of the confidential communication in the professional relationship between the client and the attorney.... "[T]he authorities are clear that the privilege extends essentially

only to the substance of matters communicated to an attorney in professional confidence. Thus the identity of a client, or the fact that a given individual has become a client are matters which an attorney normally may not refuse to disclose, even though the fact of having retained counsel may be used as evidence against the client.... To be sure, there may be circumstances under which the identification of a client may amount to prejudicial disclosure of a confidential communication, as where the substance of a disclosure has already been revealed but not its source."

*Id.* at 593–94, *quoting* from *Colton v. United States,* 306 F.2d 633, 637 (2d Cir. 1962).

■ Here, appellant, who bears the burden, has made no showing with respect to any specific client that disclosure of the client's identity would be tantamount to the disclosure of a confidential communication. Appellant argues generally that disclosure of his clients' identities might lead to disclosure that they have applied for amnesty and, presumably, that they are undocumented aliens. Such generalized speculation is insufficient as a *Baird* showing. There is no contention, such as in *Baird,* that the government already is aware of some wrongdoing by appellant's clients and now seeks to learn those persons' identities.[7]

■ Appellant does not contest the Secretary's legitimate need for this information. *See Hodge and Zweig,* 548 F.2d at 1353. In these circumstances, we agree with the district court that the identity of appellant's clients is not privileged from disclosure.[8]

---

6. Relying on *Baird v. Koerner,* 279 F.2d 623, 633–34 (9th Cir.1960), appellant mistakenly contends that the existence and application of the attorney-client privilege is governed by California (state) law. *Baird* was decided before the adoption of the Federal Rules of Evidence. F.R. Evid. 501 provides that questions of evidentiary privileges in federal question cases are governed by federal common law. *See United States v. Zolin,* — U.S. —, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989); *Hodge and Zweig,* 548 F.2d at 1352–53.

7. On remand, however, appellant may advance the argument that in particular cases disclosure

of an individual's name, or his name and the nature of the services performed, would be tantamount to the disclosure of the substance of a confidential communication.

8. Appellant also makes a mootness argument—that production of this category should not be required because the information has already been furnished to the Secretary in the form of "utilization reports" by the Fund administrator who, in turn, received such reports from appellant. Although it appears that such reports do not disclose the identities of individual clients, even if they did, the Secretary would still be

### B. *Nature and Extent of Services*

■ The portion of the district court's order requiring production of all documents requested in the subpoena "reflecting the nature and extent of the services rendered" is somewhat more problematical. As indicated, the district court believed that the attorney-client privilege did not apply. Therefore, it made no attempt to parse this category further. However, it is quite probable, if not a virtual certainty, that a category as broad as this does encompass documents which are or reflect confidential attorney-client communications.[9] Therefore, the matter must be remanded to the district court for consideration of this issue to accommodate any legitimate claims of privilege. A number of methods and procedures are available to protect confidential communications, while at the same time not frustrating the Secretary's legitimate inquiries.

■ For example, the district court may adopt the "privilege log" approach, which is essentially that set forth in the Secretary's letter which accompanied the subpoena. *See* footnote 3, *supra.* Either in conjunction with or independently of such an approach, the court may wish to make an *in camera* review of any disputed documents. *See, e.g., United States v. Zolin,* — U.S. ——, 109 S.Ct. 2619, 2627–32, 105 L.Ed.2d 469 (1989). Moreover, the Secretary could be directed to prepare a narrower, less extensive description of the documents sought than is presently set forth in the "Definitions" section of the subpoena. *See* footnote 2, *supra.* It is also possible that the Secretary's needs may be met by the furnishing of summaries of unprivileged information or by redactions. As can

be seen, a number of options are available. The district court is in a better position than this court to choose from among them after hearing from the parties.[10]

### II. *Protective Order.*

■ Appellant contends that the district court erred in denying his request for a protective order limiting disclosure of the subpoenaed information to the agency conducting the investigation and use of the information solely for the ERISA investigation. Appellant claims a protective order is necessary to protect the First Amendment rights of his clients as union members.[11] A district court's determination of whether or not to issue a protective order imposing restrictions on an administrative subpoena is reviewed for abuse of discretion. *McLaughlin v. Service Employees Union, Local 280,* 871 F.2d 857, 861 (9th Cir.1989); *United States v. Zolin,* 809 F.2d 1411, 1416–17 (9th Cir.1987), *aff'd by equally divided Court,* — U.S. ——, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989).

■ Appellant relies on two cases in support of this contention, *Marshall v. Stevens People & Friends For Freedom,* 669 F.2d 171 (4th Cir.1981), *cert. denied,* 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982), and *Local 1814, ILA v. The Waterfront Comm'n,* 667 F.2d 267 (2d Cir.1981). Both of these cases involved government subpoenas which sought the identity of contributors to or members of organizations formed to advance certain political beliefs. In both cases, the courts held that disclosure of the sought information constituted an effective restraint on First Amendment associational rights; therefore, they applied the compelling interest test. These cases are unhelpful to appel-

---

entitled to the subpoenaed information directly from appellant. This is so because one object of the investigation is to verify whether or not the information submitted by appellant to the Fund trustees is accurate.

**9.** Because the order requires production of certain "documents requested in the subpoena," this category is quite broad. For example, a client interview memorandum could "reflect the nature and extent of the services rendered."

**10.** Appellant also claims that production should not be required because it would be a breach of

his agreement with the Fund. Although this does not appear to be the case, the issue is immaterial. Whatever the contractual provisions between appellant and the Fund, they cannot override the Secretary's duties and authority under ERISA and the FTC Act.

**11.** Appellant also argues that a protective order is necessary to prevent the undermining of the attorney-client privilege. However, this is the same argument as to why the privilege should prevent disclosure of the information in the first instance.

lant's contention; they have no application to the case at bench. Appellant has made no showing that political or union advocacy or any other First Amendment interest is implicated here or that the Secretary seeks to put the information to any such use. "Bare allegations of possible first amendment violations are insufficient to justify judicial intervention into a pending investigation." *Service Employees Union,* 871 F.2d at 862. This is particularly true in the circumstances here where ERISA specifically authorizes the Secretary to make information obtained in an investigation available to any affected person or to any agency of the United States. 29 U.S.C. § 1134(a).

The district court did not abuse its discretion in refusing to issue a protective order restricting the Secretary's use of the information subpoenaed from appellant.

### CONCLUSION

The district court correctly concluded that the attorney-client privilege did not apply to disclosure of the identity of appellant's clients in the circumstances here. However, it erred in concluding that the attorney-client privilege did not apply to the disclosure of the nature and extent of the services rendered by appellant to his clients. On remand, the district court should rule on any specific claims of privilege and provide a procedure for the protection of any legitimate claims of privilege. Finally, it was not an abuse of discretion for the district court to conclude that the issuance of a protective order restricting the Secretary's use or dissemination of the subpoenaed documents was unwarranted and unnecessary in this case.

The Order of the district court is AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent herewith.