**In re GRAND JURY INVESTIGATION.**

**UNITED STATES of America, Plaintiff–Appellant,**

v.

**THE CORPORATION[1], Defendant–Appellee.**

**No. 91–55500.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1992.

Decided Aug. 31, 1992.

---

1. Given that this case is under seal, we refer to the suspect corporation as the Corporation.

Carol C. Lam, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellant.

Frank Rothman and Richard E. Drooyan, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, Cal., for defendant-appellee.

Before: POOLE, WIGGINS, and LEAVY, Circuit Judges.

WIGGINS, Circuit Judge:

The government appeals the denial of its motion for *in camera* review of allegedly privileged documents subpoenaed in a grand jury investigation. The district court had jurisdiction over the grand jury investigation pursuant to 28 U.S.C. § 1826 (1988). A timely notice of appeal was filed, and this court has jurisdiction under 18 U.S.C. § 3731 (1988) and 28 U.S.C. § 1291 (1988). We affirm the judgment of the district court.

## BACKGROUND

This appeal stems from a grand jury investigation of an alleged criminal scheme by the Corporation to defraud Medicare. The investigation focuses on the Corporation's implementation of a ferritin program in which the Corporation billed Medicare $17.00 for a ferritin serum test while billing others only $0.65 or nothing for the same test.

During the grand jury investigation, the government subpoenaed over 250,000 documents from the Corporation. However, the Corporation refused to produce eleven documents and claimed that the documents were protected by the attorney-client privilege. The Corporation provided the government with a privilege log that briefly described the documents and their subject matter.

The government then brought a motion requesting *in camera* review of the eleven documents. The Corporation opposed the motion and produced a privilege log and affidavits of in-house and retained counsel as evidence that the documents are privileged. The affidavits state that the documents contain confidential information for

the purpose of seeking legal advice and that the contents of the documents have not been disclosed to anyone outside of the Corporation or the retained law firm.

The government argued that (1) the Corporation's privilege log and affidavits were insufficient to establish the attorney-client privilege, (2) under the crime-fraud exception to the attorney-client privilege, the government made a sufficient showing to allow *in camera* review, and (3) even if they were unable to meet the requirements of the crime-fraud exception, the government provided a sufficient showing to justify an *in camera* review of the contested materials to determine whether they were indeed privileged. The district court rejected these arguments and denied the government's motion for *in camera* review.

### DISCUSSION

The government contends that the district court erred in denying the government's motion for *in camera* review of the documents which the Corporation claims are protected by the attorney-client privilege. According to the government, the district court committed three errors in denying the government's motion: The district court (1) erred in finding that the Corporation sufficiently met its burden in establishing the attorney-client privilege so as properly to refuse to produce the documents, (2) applied the wrong legal standard in determining whether the government's crime-fraud showing was sufficient to allow *in camera* review, and (3) applied the wrong legal standard in determining whether an *in camera* review of the documents should have been conducted to determine whether privilege applies. To avoid confusing the issues on appeal, these three assignments of error are discussed separately.

### I. The *Prima Facie* Showing Required for Asserting Attorney–Client Privilege

The government argues that the Corporation did not meet its burden in establishing that the attorney-client privilege applied to the eleven documents. While the law regarding the scope of the attorney-client privilege is well established, the law does not clearly delineate the showing that must be made by the party asserting the privilege over particular communications. The district court explicitly noted that there is little guidance on this issue: "[A]lthough I am willing to concede that the government is correct that the burden of proving applicability of the privilege falls on the party asserting it, I have not been able to find, nor apparently Counsel, a great deal that discusses how the burden is satisfied." However, the district court found that the privilege log and accompanying affidavits constituted a sufficient showing by the Corporation that the privilege applied.

### A. Standard of Review

Whether the documents in question are protected by the attorney-client privilege is a mixed question of law and fact subject to *de novo* review. *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir.1988).

### B. Analysis

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice," *In re Grand Jury Subpoenas (Hirsch)*, 803 F.2d 493, 496 (9th Cir.1986), *correction printed* 817 F.2d 64 (9th Cir.1987), as well as an attorney's advice in response to such disclosures. *In re Fischel*, 557 F.2d 209, 211 (9th Cir.1977). To prevent abuse and assure the availability of relevant evidence to the prosecutor, the privilege is limited to "only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).

 The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications. *In re Grand Jury Subpoenas (Hirsch)*, 803 F.2d at 496. To meet this burden, a party must demonstrate that its documents adhere to the essential elements of the attorney-client privilege adopted by this court. *Fischel,*

557 F.2d at 211.[2] In essence, the party asserting the privilege must make a *prima facie* showing that the privilege protects the information the party intends to withhold. We have previously recognized a number of means of sufficiently establishing the privilege, one of which is the privilege log approach. *Dole v. Milonas*, 889 F.2d 885, 888 n. 3, 890 (9th Cir.1989).

To make its *prima facie* showing that the attorney-client privilege applied to the eleven documents, the Corporation submitted a privilege log and affidavits regarding their confidential nature. The government argues that these are insufficient to fulfill the Corporation's burden. However, in *Dole v. Milonas*, we found that the privilege log was a means by which a party could protect its confidential communications without frustrating the prosecutor's legitimate inquiries. 889 F.2d at 890. The log submitted by the Corporation provides essentially the same—and in some aspects more—information as the one described in *Dole* which we found to be sufficient to establish the attorney-client privilege.

In *Dole*, the log identified (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated. *Id.* at 888 n. 3. The log submitted by the Corporation in this case fulfilled conditions (a), (b), (c), and (e). Furthermore, the Corporation's privilege log went beyond the *Dole* standards to provide information on the subject matter of each document. Whatever questions the Corporation's log might leave open with regard to whom the documents were shown or were intended to be shown are answered to our satisfaction by the affidavits of the attorneys responsible for preparing the documents. Therefore, the Corporation has met its burden in demonstrating the applicability of the attorney-client privilege.

## II. The *Zolin* Standard for *In Camera* Crime–Fraud Review

■ It is well settled that the attorney-client privilege does not extend to attorney-client communications which solicit or offer advice for the commission of a crime or fraud. *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933); 8 John H. Wigmore, *Evidence* § 2298 (McNaughton Rev.1961 and Supp.1991). In *United States v. Zolin*, 491 U.S. 554, 565, 109 S.Ct. 2619, 2627, 105 L.Ed.2d 469 (1989), the Supreme Court held that *in camera* review of privileged information may be used to establish whether the crime-fraud exception applies. The Court set forth a two-step analysis for determining whether *in camera* review is appropriate in a given case. First, there must be a minimal showing that the crime-fraud exception could apply. *Id.* at 572, 109 S.Ct. at 2631. If this initial hurdle is overcome, then the district court has the discretion to conduct an *in camera* review. *Id.*

The government argues that there is a reasonable basis for believing that some of the Corporation's privileged documents or portions thereof may fall within the crime-fraud exception and requests an *in camera* review of those documents. The government focuses on certain language that the district court used in making its oral decision from the bench. Specifically, the government asserts that the court's refusal to engage in "speculation" and its imprecise phrasing of the *Zolin* test led to a misapplication of the test.

### A. Standard of Review

Whether an evidentiary showing is sufficient to allow *in camera* review under the *Zolin* test is a mixed question of law and fact subject to de novo review. *See United*

---

**2.** The attorney-client privilege may be divided into eight essential elements: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Fischel*, 557 F.2d at 211 (quoting 8 John H. Wigmore, *Evidence* § 2292, at 554 (McNaughton Rev.1961)).

*States v. Spillone,* 879 F.2d 514, 520 (9th Cir.1989) (prosecutorial misconduct presents a mixed question of law and fact that is reviewed de novo), *cert. denied,* — U.S. —, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990), and *cert. denied,* — U.S. —, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990); *United States v. McConney,* 728 F.2d 1195, 1204–05 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The district court's exercise of discretion is reviewed for abuse. *See United States v. Yarbrough,* 852 F.2d 1522, 1545 (9th Cir.1988) ("Sentencing is left to the sound discretion of the trial judge and his decision is reviewed only for an abuse of discretion.") Under the abuse of discretion standard, this court cannot reverse unless it has a definite and firm conviction that the district court committed a clear error of judgment. *Abatti v. Commissioner,* 859 F.2d 115, 117 (9th Cir.1988).

### B. Analysis

The first step in the *Zolin* analysis sets the threshold for the evidentiary showing necessary before a court can conduct *in camera* review. In establishing the standard, the Court recognized that *in camera* review of documents is a much smaller intrusion on the attorney-client privilege than full disclosure:

> The threshold we set, in other words, need not be a stringent one.
>
> We think that the following standard strikes the correct balance. Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person," *Caldwell v. District Court,* 644 P.2d 26, 33 (Colo.1982), that *in camera* review of the materials may reveal evidence to establish the claim that the crime fraud exception applies.

491 U.S. at 572, 109 S.Ct. at 2631.

*Caldwell* further explains the threshold selected by the Court, noting that "[r]equiring a strict *prima facie* case may not be possible at the discovery stage, and would

result in an overzealous protection of the attorney-client privilege in a context where the rationale for that privilege may be inapplicable." 644 P.2d at 33. The *Zolin* threshold is set sufficiently low to discourage abuse of privilege and to ensure that mere assertions of the attorney-client privilege will not become sacrosanct.

The low threshold set out in *Zolin,* however, does not result in automatic *in camera* review. Although the burden is relatively minimal, an evidentiary threshold must first be met by the party requesting review before the court may exercise its discretion. The district court noted:

> In *Zolin,* the Supreme Court was reluctant to allow blanket rules for allowing in camera review in determining, for example, what was specifically involved there, the crime fraud exception, because the Supreme Court indicated it feared abuse and possible due process violations.

Although we too are cognizant of these concerns, the *Zolin* threshold must be applied in light of the well established practice of conducting *in camera* review to prevent abuses of the attorney-client privilege. *See Zolin,* 491 U.S. at 568–69, 109 S.Ct. at 2628–29 (citing *In re Grand Jury Witness (Salas),* 695 F.2d 359, 362 (9th Cir.1982)). Because "disclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege," the *in camera* inspection can be an effective means to ensure that the attorney-client privilege is not abused. 491 U.S. at 568, 109 S.Ct. at 2628. At the same time, use of the *in camera* review process must be conducted with respect for the attorney-client privilege. The threshold set out in *Zolin* strikes a balance between the intrusion imposed on the privilege by the review process and the likelihood that *in camera* review may reveal evidence to show that the crime-fraud exception applies.

The Court in *Zolin* also set forth several factors to guide district courts in exercising their discretion in conducting *in camera* review. Once the threshold showing is

made to allow *in camera* review, courts should make the decision to review in light of the amount of material they have been asked to review, the relevance of the alleged privilege material to the case, and the likelihood that *in camera* review will reveal evidence to establish the applicability of the crime-fraud exception. 491 U.S. at 572, 109 S.Ct. at 2631.

The Corporation is under grand jury investigation for a criminal scheme to defraud Medicare by adding a ferritin program to its standard blood test. Before the Corporation initiated its ferritin program, it solicited and received advice from counsel. The government argues that the Corporation's decision to add an apparently over-priced ferritin test to its standard panel of tests, combined with attorney-client communications directed at implementing this alleged criminal scheme, are sufficient to allow *in camera* review under *Zolin.*

To the extent that the district court held that the government's showing did not meet the *Zolin* threshold because it required the court to engage in "speculation," the court misapplied *Zolin.* Some speculation is required under the *Zolin* threshold. *In camera* review is appropriate as long as the showing supports a reasonable belief "that *in camera* review of the materials *may* reveal evidence to establish the claim that the crime-fraud exception applies." 491 U.S. at 572, 109 S.Ct. at 2631 (emphasis added). A *prima facie* showing of crime-fraud is not required before an *in camera* inspection is appropriate. 491 U.S. at 563 n. 7, 572, 109 S.Ct. at 2627 n. 7, 2631; *Caldwell,* 644 P.2d at 33. A showing sufficient to establish a reasonable belief that *in camera* review may lead to evidence that the exception applies is enough to allow *in camera* review. The *Zolin* threshold is designed to prevent "groundless fishing expeditions," not to prevent all speculation by the district court. 491 U.S. at 571, 109 S.Ct. at 2630.

Moreover, *Zolin* requires only a factual showing sufficient to support a reasonable, good-faith belief that review of the privileged documents "may *reveal evidence* to establish the claim that the crime fraud

exception applies." 491 U.S. at 572, 109 S.Ct. at 2631 (emphasis added). The district court, however, apparently required a factual showing that supports a good-faith belief that the crime-fraud exception applies. Such a standard is set too high. There is an important difference between showing how documents may supply evidence that the crime-fraud exception applies and showing directly that the exception applies. This difference results in a considerably lower threshold for conducting *in camera* review than for fully disclosing documents.

■ Nevertheless, any misapplication of the *Zolin* standard by the district court was harmless error because the government did not meet the proper *Zolin* threshold. Even if the government had met this threshold, the failure to conduct an *in camera* review of the alleged privilege documents would not have been an abuse of discretion. Although the burden on the court of reviewing the withheld documents would not have been great, the court would have been acting within its sound discretion in determining that the likelihood that review would produce evidence supporting the crime-fraud exception was not sufficient to require review.

### III. The Legal Standard for Engaging in *In Camera* Review of Documents Over Which the Attorney–Client Privilege Has Been Asserted

■ The government's final argument is that, even if the Corporation made a sufficient showing to treat the documents as privileged and the crime-fraud exception did not apply, the government is still entitled to *in camera* review to ensure that the documents are truly privileged. The government contends that the district court applied the wrong legal standard in deciding whether to conduct *in camera* review of the documents to determine whether they were indeed privileged. The district court noted that there is no clear guidance on this issue. The law does not clearly specify what type of showing should be made by the opposing party to justify *in camera* review of the documents once the

party asserting privilege has made a threshold showing sufficient to satisfy the court.

Left without effective guidance, the district court invented its own standard through analogy to areas of criminal law:

> [I]n thinking about this problem it would seem to me that a place to draw an analogy are [sic] from a couple of other areas in the law—in the criminal law which in effect match specificity with specificity.

> For example, on a motion to dismiss an indictment for pre-indictment delay, although the standard has been laid out with some consistency for a number of years, basically the defendant, if he or she alleges that she or he's been prejudiced by the delay and gives some examples ... the more specific his or her declarations are then the more specific the reasons are that the Government must explain why this delay was justified.

> Also, another example of it—of this matching specificity with specificity occurs in wiretap cases where a defendant can bring a discovery motion to have information disclosed as to whether he or she has had his or her phone tapped. The more specific the declaration is of the defendant, the more the obligation is of the Government to conduct the search and meet the denial. . . .

The government argues that the legal standard the district court selected was incorrect, although it offers no alternative legal standard. We agree that the district court employed the wrong standard but find that this amounts to harmless error.

### A. The Standard of Review

Whether the district court applied the correct legal standard in determining whether the government had made a showing sufficient to justify an *in camera* review to determine whether the documents are privileged is a matter of law. We review this issue de novo. *See McConney,* 728 F.2d at 1201.

### B. Analysis

In *Zolin,* the Supreme Court stated that *"in camera* review does not destroy the privileged nature of the contested communications." 491 U.S. at 569, 109 S.Ct. at 2629. This court has also found that *in camera* review is an acceptable means to determine whether disputed materials fit within the privilege. *See In re Grand Jury Witness (Salas),* 695 F.2d at 362; *In re Grand Jury Proceeding (Schofield),* 721 F.2d 1221, 1223 (9th Cir.1983.) What has not been clearly established, however, is when such *in camera* review is appropriate.

Although *in camera* review of documents does not destroy the attorney-client privilege, it is an intrusion which must be justified. Some threshold must be met by the party contesting the application of privilege before the court examines the materials. The rationale underlying the district court's wiretap "matching specificity with specificity" standard is strained in this context. The district court can depend on the denial or admission of a government official to determine definitely the existence or nonexistence of a government wiretap. However, the process of determining whether privilege applies to a given set of documents is subject to an infinite number of interpretations by attorneys. By requiring the government to match the *prima facie* showing made by the Corporation in establishing the attorney-client privilege, the district court sets the threshold too high. It thereby makes *in camera* review too difficult to obtain and invites abuse of the attorney-client privilege.

In the absence of any direct guidance on this issue, we find that the standard established in *Zolin* for crime-fraud *in camera* review applies equally well when a party seeks *in camera* review to contest assertions of the privilege. The balance achieved in *Zolin* between the intrusion on the privilege and the likelihood that the privilege may not apply justifies a similar minimal threshold for *in camera* review when a party believes that the materials are not privileged for reasons other than the crime-fraud exception. The same two-

stage process established in *Zolin* should be employed in this context. To empower the district court to review the disputed materials *in camera*, the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged. If the party makes such a showing, the decision whether to conduct the review rests within the discretion of the district court. The court's discretion, however, is guided by the factors enumerated in *Zolin*. *See* 491 U.S. at 572, 109 S.Ct. at 2631.

■ In this case, the Corporation's privilege log and accompanying affidavits are sufficient to establish that the attorney-client privilege applies to the eleven withheld documents. Thus, the government must establish a sufficient factual basis for the court to conduct an *in camera* inspection. Although the district court did apply a higher threshold, the application of the correct threshold would not change the result. The government has failed to provide an adequate factual showing to allow review. Moreover, even if the government had provided a sufficient factual basis to support such a good faith belief, we would not find that the district court abused its discretion. Therefore, the court did not err in refusing to conduct a review of the documents.

## CONCLUSION

For the reasons stated above, we AFFIRM the decision of the district court.