In re M & L BUSINESS MACHINE
CO., INC., Debtor.

Christine J. JOBIN, Trustee,
Plaintiff/Appellee,

v.

BANK OF BOULDER, et al.,
Defendants/Appellants.

Civ. A. No. 94–S–877.

United States District Court,
D. Colorado.

June 14, 1994.

**938**

Christine Jobin, Denver, CO, for plaintiff/appellee.

Nancy Miller, Denver, CO, Joseph French, Boulder, CO, Robert Youle, Chris Koenigs, Denver, CO, for defendants/appellants.

## ORDER REMANDING ACTION TO BANKRUPTCY COURT

SPARR, District Judge.

THIS MATTER comes before the Court on an expedited appeal, filed by Defendants/Appellants Bank of Boulder (hereafter "the Bank"), Richard Eason, David Eason, and the law firm of Eason, Sprague & Wilson (the "Eason firm"). On April 18, 1994, after oral argument, the Court granted the Appellants' motion for stay and for mandatory injunctive relief. On May 19, 1994, the Court heard oral argument on this expedited appeal. For the reasons set forth below, the Court will remand this matter to the bankruptcy court for a determination of the applicability of the crime/fraud exception to the attorney-client privilege which is consistent with this order.

### I. Nature of the Appeal

This appeal concerns three separate rulings by the bankruptcy court: on March 8, and April 6, 1994, the bankruptcy court made rulings from the bench which are memorialized by minutes, and the transcripts from those proceedings are part of the record. On April 1, 1994, the bankruptcy court issued a written opinion which is also the subject of this appeal. This Court must note first that, due to the nature of the proceedings below, it is neither capable of reading the sixteen volume record which has been designated, nor is such perusal of the record likely to assist the Court in the disposition of this appeal. Accordingly, for reasons to be set forth in further detail below, this Court will concern itself only with the written order of April 1, 1994, as well as relevant portions of transcripts from the March 8, and April 6, 1994 proceedings.

### II. Standard of Review

It is well established that neither the Tenth Circuit nor the district court can disturb a bankruptcy court's finding of fact unless they are clearly erroneous. *Hall v. Vance,* 887 F.2d 1041, 1043 (10th Cir.1989). Fed.R.Bankr.P. 8013. While the district court is free to draw inferences from undisputed facts, it may not accept the findings of

the bankruptcy court and then go on to make additional findings having the effect of contradicting the conclusions of the bankruptcy court. *In re Hart,* 923 F.2d 1410, 1416 (10th Cir.1991) (quotation and cite omitted). With regard to questions of law, these are reviewed *de novo* by the district court. *In re Perma Pacific Properties,* 983 F.2d 964, 966 (10th Cir.1992). As will be made apparent below, this order and remand will concern only questions of law, as there is a dearth of factual findings in the rulings under scrutiny.

### III. Issues on Appeal

The primary issue on this appeal is whether the bankruptcy court properly concluded that the Trustee had established that the crime/fraud exception to the attorney-client privilege applied to certain documents in the possession of the Eason firm which related to the Bank's dealings with a check-kiting investigation of the M & L Business Machines Corporation and its directors. Before that ultimate question can be addressed, the Court first will direct its attention to four issues which are properly considered in determining the standard which was applied by the bankruptcy court as well as the standard upon which this Court will base its remand: (1) For what purpose did the bankruptcy court receive the Eason firm's documents *in camera,* after the determination of certain (unspecified) issues on March 8, 1994; (2) Whether the bankruptcy court properly concluded that a prima facie case or at least a threshold showing for *in camera* review was made by the Trustee on March 8, based upon findings or comments in the transcript of those proceedings; (3) Whether the Bank and the Eason firm were afforded their absolute right to be heard, through testimony and argument, once the bankruptcy court undertook to weigh evidence in making its determination that the exception to the privilege applied; and (4) Whether the documents allegedly subject to the exception should have been kept under seal or other court-imposed privacy procedure until all avenues of appeal were exhausted. In order to discuss the implications of these issues, it is helpful to consider the chronology of events which led to the bankruptcy court's order turning the documents over to the Trustee.

### A. The March 8, 1994 Order

After several days of hearing, the bankruptcy court made the following observation: "I think it's pretty clear that the bank knew or should have known that the fraud being perpetrated by M & L and Robert Joseph, Hatch, et al., should have reported it, did not; should have done some additional investigation, apparently did not; wanted to cover their own position first, contrary to the law. So I am going to order that the materials requested be submitted *in camera* within seven working days for my inspection, and I will review to see if, indeed, the—there is relevant material that should be turned over in discovery." R. vol. XI at 584. Based on this conclusion by the bankruptcy court, the Bank and the Eason firm reasonably expected that the court would undertake an *in camera* review of the documents, and would then determine whether they supported the application of the crime/fraud exception.

The first indications that Defendants received regarding the course of the bankruptcy court's proceedings after the initial hearings commencing on February 28, 1994, were apparently after the minutes had been entered concluding the February 28 proceedings. As a result of the Defendants' concern regarding what may or may not have been ruled upon, on March 18 they filed a joint motion to amend, clarify, or reconsider order and motion for stay (the minute order entered March 8 after the conclusion of the February 28 proceedings). R. vol. III, doc. 271. The Defendants' confusion surrounding the bankruptcy court's rulings was not clarified.

### B. The April 1 Order

In this one and one-half page written order, the bankruptcy court ruled upon the Bank's motion to take *in camera* testimony in connection with the court's review of its documents. The bankruptcy court, apparently for the first time, explicitly stated its conclusion that the Trustee had made a prima facie case for the application of the crime/fraud exception. The bankruptcy court did not mention any consequences of its *in camera* inspection, except that it had affixed Bates Stamp numbers to the documents, and that many of the documents appeared to

contain non-relevant confidential material. The court then ordered that all of the documents were to be held confidential and viewed only by the Trustee and her expert witnesses, and that no information could be revealed to third parties until further order of court. The documents were made available for pick-up by the Trustee, with the Trustee apparently determining the relevancy of many of the surrendered and non-relevant documents. This order, entered on April 1, 1994, was not mailed to counsel until April 5, 1994. In the interim, the Trustee, as a result of contacting the bankruptcy court, learned of the contents of the order and picked up the documents from the court's chambers. The Bank and the Eason firm, however, did not meet with such success after their telephonic attempts to determine if any ruling had been made. The Appellants did not learn of the order until they were before the bankruptcy court on other matters on April 6, 1994.

### C. The April 6 Order

The parties were apparently before the bankruptcy court on this date for a hearing on the motion (as well as other motions) by the Bank and the Eason firm to amend, clarify or reconsider. The motion was summarily denied by the bankruptcy court. The Bank and the Eason firm first learned of the April 1 order turning over the documents at this hearing, and then moved for a stay of the order at the April 6 hearing. The bankruptcy court denied the motion, explaining that it had found that the Trustee established a prima facie case, that it had inspected the documents *in camera*, even though it explained such examination was not necessary, and that the motion for stay was based upon an effort to delay and complicate the proceedings. After some somewhat irregular proceedings, the relief requested by Appellants which would have stayed the effect of the April 1 order was denied, and the court then heard other matters. The Appellants then obtained a stay of proceedings in the district court.

With regard to the four previously mentioned issues, it is clear that although the bankruptcy court received the Appellants' documents with the proviso that it would undertake *in camera* review, it did not in fact make such review. If the bankruptcy court had previously determined, as it asserted it had in its April 1 order, that the Trustee had established a prima facie case, then the record from the March 8 hearing should have indicated such an express finding with specific factual findings in support of that conclusion. Otherwise, it would appear that the lower threshold showing for consideration of *in camera* review might have been appropriate. At no time does it appear that either the Bank or the Eason firm was afforded any right to be heard on this matter of rebutting a prima facie case, or otherwise responding to the court's inquiries after any sort of *in camera* review. Finally, the Appellants were also denied the opportunity to hold their documents confidential until all avenues of appeal were exhausted. Neither the facts nor the law in the record before the court appear to support the surrender of the documents to the Trustee and her experts. The bankruptcy court's summary denial of a stay (after the documents had already been turned over) was likewise inappropriate.

The underlying problem with the record in this case is that it does not contain sufficient detail of the findings and conclusions made by the bankruptcy court which led to the surrender of the materials to the court and the subsequent transmittal of those documents to the Trustee. As stated earlier, this Court will not search the voluminous record in this case for some apparent or not apparent finding of fact or conclusion of law which might support the bankruptcy court's ultimate conclusion that the crime/fraud exception applied and that the documents were appropriately surrendered. Counsel for the parties have assisted the Court in locating the sparse factual findings which might be characterized as supportive of the bankruptcy court's ultimate legal conclusion. Such findings are insufficient as a matter of law. This Court shares the confusion which the Appellants have had with the process employed by the bankruptcy court. The Appellants rightfully thought that the bankruptcy court would conduct an *in camera* review of their documents, but in the April 1 order it was made clear that the *in camera* review was not really an *in camera* review. For the first time in the April 1 order, the court determined that the Trustee had established

a prima facie case for applying the crime/ fraud exception. It does not appear that at any time did the Appellants have any opportunity to rebut the asserted prima facie case established by the Trustee. This opportunity, for reasons explained more fully below, was required before an ultimate conclusion on the issue was made (turning over the documents). In addition, it was also improper for the bankruptcy court to effectively delegate its duties to make discovery rulings to the Trustee. This was accomplished in the April 1 order when all of the documents—relevant or not—were turned over to the Trustee, and she was allowed to determine which documents were relevant and which were not.

Based on the above observations, this Court is not able to undertake any review of factual determinations because they appear to be lacking in the record. It will therefore be necessary to set forth the relevant legal standards for the bankruptcy court to make its determinations of this issue on remand. It must also be added here that, although the issue was raised in the appeal briefs, the application of the work-product doctrine will not be discussed here as it does not appear that the bankruptcy court made any rulings on this.

### IV. Determinations on Remand

■ The bankruptcy court heard several days of testimony on issues relating to the crime/fraud exception. It is therefore most appropriate for that court to determine on remand whether the exception applies. The following discussion is designed to provide a framework for the bankruptcy court's analysis and to assist in determining whether application of the crime/fraud exception is appropriate.

### A. Scope of the Crime/Fraud Exception

■ With regard to the question of what kind of activity the crime/fraud exception encompasses, the District of Columbia Circuit, then Judge Bader Ginsburg, noted in *U.S. v. White* 887 F.2d 267, 271 (1989): It does not suffice that the communications may be related to a crime. To subject the attorney-client communications to disclosure, they must actually have been made with an intent to further an unlawful act (citations omitted).

This definitional problem, concerning the scope of the application of the exception, lies at the heart of this dispute. Its resolution also naturally dictates the outcome of certain issues concerning which particular documents (and perhaps during a specific time frame) may be subject to the exception.

### B. Evidentiary Standard

In *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933), the Supreme Court acknowledged the importance of the attorney-client privilege, but also held that the privilege takes flight if the relation is abused. The attorney-client privilege does not extend to communications "made for the purpose of getting advice for the commission of a fraud or a crime." *U.S. v. Zolin*, 491 U.S. 554, 562–63, 109 S.Ct. 2619, 2625–26, 105 L.Ed.2d 469 (1989). The *Clark* decision established the evidentiary standard for application of the crime/fraud exception:

> There must be a showing of a prima facie case sufficient to satisfy the judge that the light should be let in ...

> To drive the privilege away, there must be "something to give colour to the charge;" there must be prima facie evidence that it has some foundation in fact. When the evidence is supplied, the seal of secrecy is broken.

*Haines v. Liggett Group, Inc.*, 975 F.2d 81, 95 (3d Cir.1992), citing *Clark*, 289 U.S. at 14–15, 53 S.Ct. at 469. The evidentiary standard applicable to the crime/fraud exception is not as straightforward as it could be. However, the Court observes at the outset that the evidentiary standard applicable here contains several familiar components, and these will be discussed below.

■ The attorney-client privilege under federal law is the oldest of the privileges for confidential communications known to the common law. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). It is the purpose of the crime/fraud exception to the attorney-client privilege to assure that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime. *United States v. Zolin*, 491 U.S. at

563, 109 S.Ct. at 2626 (citation omitted). It must always be kept in mind that the purpose of the crime/fraud exception is to assure that the seal of secrecy between lawyer and client does not extend to communications from the lawyer for the purpose of giving advice for the commission of a fraud or crime, and that the seal is broken when the lawyer's communication is meant to facilitate future wrongdoing by the client. Where the client commits a fraud or crime for reasons completely independent of legitimate advice communicated by the lawyer, the seal is not broken. The advice subject to the exception must relate to future illicit conduct by the client. *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 90 (3d Cir.1992).

■ As indicated above, in order to successfully invoke the crime/fraud exception to the attorney-client privilege, the movant must make a prima facie showing that the attorney was retained in order to promote intended or continuing criminal or fraudulent activity. *United States v. De La Jara*, 973 F.2d 746, 748 (9th Cir.1992) (citation omitted). The prima facie showing is distinguishable from the determination of whether the crime/fraud exception applies. If the party seeking to apply the exception has made its initial showing, then a more formal procedure is required than that entitling plaintiff to *in camera* review. Where a fact finder undertakes to weigh evidence in a proceeding seeking an exception to the privilege, the party invoking the privilege has the absolute right to be heard by testimony and argument. *Haines v. Liggett Group, Inc.*, 975 F.2d at 97. The establishment of the prima facie case, therefore, does not dictate the outcome of the ultimate question of whether the exception applies. Judge Easterbrook has likened the prima facie case function here with its function in the area of employment discrimination: "[A] prima facie case must be defined with regard to its function: to require the adverse party, the one with superior access to the evidence and in the best position to explain things, to come forward with that explanation." *In re Matter of Feldberg*, 862 F.2d 622, 626 (7th Cir.1988). With these considerations in mind, the Court will consider the elements of the threshold showing required for *in camera* review and the prima facie showing.

### 1. Threshold Showing of Applicability of Exception

■ The court may decide, based upon submission by the party challenging the privilege alone, whether a factual basis is present to support a good faith belief by a reasonable person that materials may reveal evidence of a crime or fraud. *Haines*, 975 F.2d at 96. The *Zolin* decision sets forth a two-step analysis for *in camera* review:

First, there must be a minimal showing that the crime or fraud exception could apply; if this is overcome, then

Second, the court may determine, in its discretion, whether it is appropriate for it to conduct *in camera* review.

491 U.S. at 572, 109 S.Ct. at 2630. The relatively low threshold showing set forth in *Zolin* does not result in automatic *in camera* review. As *Zolin* explained, courts should make the decision to review in light of the amount of material they have been asked to review, the relevance of the alleged privileged material to the case, and the likelihood that *in camera* review will reveal evidence to establish the applicability of the crime/fraud exception. *In re Grand Jury Investigation*, 974 F.2d 1068, 1073 (9th Cir.1992), citing *Zolin*, 491 U.S. at 572, 109 S.Ct. at 2630. Once this showing is made, the decision whether to review *in camera* rests in the sound discretion of the court. *Haines*, at 96, citing *Zolin*, 491 U.S. at 572, 109 S.Ct. at 2630. The threshold requirement exists not merely to prevent fishing expeditions, but is also designed to advance the policy of protecting open and legitimate disclosure between attorneys and clients. This policy must be protected by carefully considering when *in camera* review is appropriate. *United States v. De La Jara*, 973 F.2d at 749, citing *Zolin*, 491 U.S. at 571, 109 S.Ct. at 2630. *In camera* inspection is obviously a much smaller intrusion upon the attorney-client privilege than is public disclosure. Once a court determines that *in camera* review is appropriate, the court may decide that, based on the submission alone, a factual basis is present to support a good faith belief by a reasonable person that the materials may reveal evidence of a crime or fraud. Deciding whether the crime/fraud exception

applies is another matter. As Judge Aldisert explained in *Haines,* "[i]f the party seeking to apply the exception has made its initial showing, then a more formal procedure is required than that entitling a plaintiff to *in camera* review. The importance of the privilege ... as well as fundamental concepts of due process require that the party defending the privilege be given the opportunity to be heard, by evidence and argument, at the hearing seeking an exception to the privilege." 975 F.2d at 96–97.

2. Establishment of Prima Facie Case

■■■ It is clear that the burden of proof is on the party attacking the assertion of the privilege—where the privilege presumptively applies (the reverse of the typical situation where it is on the party asserting the privilege). With regard to the purpose of the prima facie evidence, Judge Easterbrook's analogy to employment discrimination law is helpful. If the party attacking the privilege has made out its prima facie case for application of the exception, then the party asserting the privilege must thereafter be provided the opportunity to rebut such evidence. If the court then determines that such explanation is satisfactory, then the privilege remains. *Haines,* 975 F.2d at 97. The bankruptcy court, if it in fact did determine that Plaintiff had established her prima facie case, did not afford Defendants the opportunity to rebut such showing. The practical effect of skipping over the opportunity to rebut eviscerates the whole notion of the need for establishing a prima facie case.

Finally, this Court concurs with the holding in *Haines,* 975 F.2d at 81, that where a fact finder undertakes to weigh evidence in a proceeding seeking an exception to the privilege, the party invoking the privilege has the absolute right to be heard by testimony and argument. As noted above it is neither clear what the bankruptcy court determined the Plaintiff had shown—a sufficient showing for *in camera* review or establishment of a prima facie case, nor is it clear upon which facts or conclusions the ultimate decision to turn over the documents was based. For all of these reasons, this matter must be remanded to the bankruptcy court to make the necessary determinations consistent with the case law governing the crime/fraud exception to the attorney-client privilege.

Accordingly, for the reasons stated in this order, this action is **REMANDED** to the bankruptcy court, with directions to make findings and conclusions not inconsistent with this order.