**In re GRAND JURY SUBPOENA 92–1(SJ).**

**Appeal of the CORPORATION.[1]**

**No. 93–10537.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1994.

Decided July 28, 1994.

---

**1.** All documents and briefs in this matter have been filed under seal to protect the secrecy of the ongoing grand jury proceedings. The true names of the appellant corporation and its counsel are not revealed in this opinion. *See In Re Grand Jury Proceedings*, 867 F.2d 539, 540 (9th Cir.1989).

Richard G. Seeborg, Asst. U.S. Atty., San Jose, CA, for appellees.

Before: WALLACE, Chief Judge, CHOY, Circuit Judge, and McGOVERN,* Senior District Judge.

Opinion by Senior District Judge McGOVERN.

McGOVERN, Senior District Judge:

The Corporation appeals the district court's denial of its motion to quash a grand jury subpoena served on its corporate counsel. The Corporation also challenges the district court's order to submit the subpoenaed documents for *in camera* review to establish whether they fall within the crime-fraud exception to the attorney-client privilege. This case presents a novel issue in applying *United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989): In determining whether a party requesting *in camera* inspection has made a sufficient threshold showing under the crime-fraud exception, must a district court consider countervailing evidence presented by the party asserting the privilege?

## FACTS AND PRIOR PROCEEDINGS

For over two years, the Corporation has been the focus of a federal grand jury investigation of potential export control violations. The Corporation manufactures and exports global positioning systems (GPS) units. These units, which receive and process satellite signals, may be used for both civilian and military purposes.

In February 1988, the Corporation asked its corporate counsel for assistance in obtaining export licenses to ship GPS units to Iran and to the United Arab Emirates (UAE). The Department of Commerce issued the export license for the UAE on April 24, 1989, but did not issue the license for Iran until March 28, 1990. The government alleges that, prior to the March 28, 1990 date, the Corporation illegally exported GPS units to Iran via a front company in the United Arab Emirates (UAE).

The government served a *subpoena duces tecum* on the Corporation's counsel on July 31, 1992. The subpoena requested all documents generated between January 1, 1988 and July 15, 1991 in relation to the Corporation's allegedly illegal exports. The Corporation moved to intervene, and both the Corporation and its counsel invoked the attorney-client privilege and moved to quash the subpoena. The government opposed the motions to quash, arguing that the subpoenaed documents fell within the crime-fraud exception to the attorney-client privilege.

After a hearing, the district court granted the Corporation's unopposed motion to intervene but denied its motion to quash. Citing *United States v. Zolin,* 491 U.S. 554, 572, 109 S.Ct. 2619, 2630–31, 105 L.Ed.2d 469 (1989) (quotation omitted), the district court found the government's affidavit sufficient "to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." The court therefore ordered the Corporation's counsel to submit the subpoenaed documents for *in camera* review. The Corporation timely appeals.

## JURISDICTION AND STANDARDS OF REVIEW

■ The district court had subject matter jurisdiction of this federal grand jury pro-

---

* Honorable Walter T. McGovern, Senior United States District Judge for the Western District of Washington, sitting by designation.

ceeding under 18 U.S.C. § 3231 and Federal Rule of Criminal Procedure 17(c). Where, as here, a subpoena is directed to a third party who cannot be expected to risk contempt in order to protect the interests of the persons whose papers are to be seized, the district court's order denying the motion to quash the subpoena is a final order appealable to this Court under 28 U.S.C. § 1291. *In re Grand Jury Subpoenas Dated Dec. 10, 1987,* 926 F.2d 847, 852–53 (9th Cir.1991); *see Perlman v. United States,* 247 U.S. 7, 13, 38 S.Ct. 417, 419–20, 62 L.Ed. 950 (1918).

■■■ We review *de novo* "[w]hether an evidentiary showing is sufficient to allow *in camera* inspection under the *Zolin* test." *In re Grand Jury Investigation,* 974 F.2d 1068, 1071 (9th Cir.1992). If the requisite evidentiary showing is made, we review the district court's decision to allow inspection for abuse of discretion and cannot reverse absent a "definite and firm conviction that the district court committed a clear error of judgment." *Id.* at 1072. The district court's decision regarding the scope of *in camera* review of privileged documents is a mixed question of law and fact reviewed *de novo. See id.* at 1071; *In re Grand Jury Subpoenas Dated Dec. 10, 1987,* 926 F.2d at 858–59 (rulings on the scope of the attorney-client privilege are mixed questions of law and fact reviewed *de novo,* unless the scope of the privilege is clear and the ruling is essentially factual).

### DISCUSSION

On appeal, the Corporation contends that the district court misapplied the *Zolin* test in determining that the government had made a sufficient crime-fraud showing to allow *in camera* review. The Corporation also argues that the district court erred by ordering *in camera* review of documents created after the completion of its alleged criminal activities.

### A. The Zolin Standard for In Camera Crime–Fraud Review

■ The attorney-client privilege protects confidential communications between a client seeking legal advice and an attorney providing such advice. *In re Grand Jury Investigation,* 974 F.2d at 1070. However, the priv-

ilege does not extend to "communications which solicit or offer advice for the commission of a crime or fraud." *Id.* at 1071.

In *Zolin,* 491 U.S. at 565, 109 S.Ct. at 2627, the Supreme Court held that a district court may, in appropriate circumstances, conduct *in camera* review of privileged documents to assess whether they fall within this crime-fraud exception. Noting that *in camera* review "is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure," the *Zolin* Court concluded that the evidentiary showing necessary to trigger *in camera* review *"need not be a stringent one." Id.* at 572, 109 S.Ct. at 2631 (emphasis added).

■ *Zolin* requires a district court to conduct a *two-step* analysis. First, the court must " 'require a showing of a factual basis adequate to support a good faith belief by a reasonable person,' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* at 572, 109 S.Ct. at 2631 (citing *Caldwell v. District Court,* 644 P.2d 26, 33 (Colo.1982)). Once this threshold showing is made, the court must make a discretionary decision whether to order *in camera* review

> in light of the facts and circumstances of the particular case, including, among other things, the volume of the materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, *together with other available evidence then before the court,* will establish that the crime-fraud exception does apply.

*Zolin,* 491 U.S. at 572, 109 S.Ct. at 2631 (emphasis added).

■■■ The Corporation urges us to find that a district court must consider "other available evidence," in addition to that presented by the party requesting review, at both steps of the *Zolin* analysis. However, the first step of the analysis should focus only on evidence presented by the party seeking *in camera* review. *Cf. Haines v. Ligget Group,* 975 F.2d 81, 96 (3d Cir.1992) ("For in camera inspection, it would be suffi-

cient for the district court, in its discretion, to consider only the presentation made by the party challenging the privilege."). In *In re Grand Jury Investigation,* we observed that "an evidentiary threshold must first be met *by the party requesting review* before the district court may exercise its discretion." 974 F.2d at 1072 (emphasis added). Even so, the burden on the requesting party is "relatively minimal." *Id.* We require only "[a] showing sufficient to establish a reasonable belief that *in camera* review *may lead to evidence* that the exception applies"; we do not require a *prima facie* showing that the exception *does* apply. *Id.* at 1073 (emphasis added). This lenient threshold "strikes a balance between the intrusion imposed on the privilege by the review process and the likelihood that *in camera* review may reveal evidence to show that the crime-fraud exception applies." *Id.* at 1072. To require a detailed consideration of all available evidence at the threshold step of the *Zolin* analysis would severely disrupt this balance.

In the second step of the *Zolin* analysis, when the district court considers whether to exercise its discretion to conduct *in camera* review, it may consider "other available evidence then before the court." *Zolin,* 491 U.S. at 572, 109 S.Ct. at 2631. Although it is clearly proper for a court to entertain such evidence at the second step of the analysis, *Zolin* does not require that the court undertake such an examination.

■ In this case, the record does not reflect whether the district court realized it had the discretion to consider the evidence offered by the Corporation in deciding whether to exercise its discretion to order *in camera* review. The Corporation argues that the district court assumed it could not consider the additional evidence and urges us to remand for the district court to exercise its discretion. The record is insufficient for this argument because the Corporation, as the party which argues that the district court's ruling rested on an erroneous understanding of the scope of its discretion, had the burden of creating a record which would reflect whether the district court's refusal to consider the additional evidence offered was based on such an erroneous perception. No motion

was made and no effort was undertaken by the Corporation.

■ In the instant case, the government's affidavit is clearly sufficient to meet the *Zolin* threshold. The affidavit is based on testimony of two former employees of the Corporation as well as on telephone records, invoices, and other documentary evidence. The government's affidavit indicates that, beginning in February of 1989, the Corporation began negotiating the sale of GPS units to a buyer in Iran. According to one former employee, the Corporation's president shipped GPS units to the UAE in July 1989 and, a short time later, received a telex from Iran thanking him for the units. Another former employee, who served as a customer trainer and technician for the Corporation, also testified that a GPS unit shipped to the UAE in March of 1990 had made its way to Iran by October 1990. He further stated that both an Iranian trainee and the Corporation's vice-president indicated that the GPS units in Iran came from a UAE front company deliberately set up for that purpose.

Taken together, this evidence supports an objectively reasonable belief: (1) that the Corporation used its UAE export license to disguise and divert illegal reexports to Iran; and (2) that, in furtherance of this scheme, the Corporation sought its counsel's legal assistance in obtaining export licenses to both countries. On the basis of the affidavit, therefore, the district court correctly found that the government had made a sufficient showing that the crime-fraud exception could apply.

■ Turning to the second step of the *Zolin* test, the Corporation has made no showing that the district court abused its discretion. Indeed, our analysis of *Zolin's* discretionary factors—the volume of the material to be reviewed, the relevance of the allegedly privileged material to the case, and the likelihood that *in camera* review together with other available evidence will establish the applicability of the crime-fraud exception—supports the district court's decision. The government requested the court to review only a small volume of documents, documents highly relevant to the key issue of the

timing of the Corporation's shipment of GPS units to Iran. Finally, the available evidence indicates a substantial likelihood that *in camera* review will produce evidence supporting the crime-fraud exception. Hence, we cannot say that the district court abused its discretion in ordering *in camera* review of the allegedly privileged documents.

### B. Scope of In Camera Crime–Fraud Review

 However, the district court erred by failing to limit the scope of its *in camera* review to documents generated during the course of the Corporation's alleged criminal scheme. Attorney-client communications concerning past or completed crimes do not come within the crime-fraud exception to the attorney-client privilege. *In re Federal Grand Jury Proceedings 89–10 (MIA)*, 938 F.2d 1578, 1581 (11th Cir.1991); *see also United States v. Hodge and Zweig*, 548 F.2d 1347, 1354 (9th Cir.1977) (crime fraud exception applies to "legal representation ... secured in furtherance of intended, or present, continuing illegality"). Absent a continuing cover-up, therefore, *in camera* review pursuant to the crime-fraud exception should be limited to documents generated before the completion of the alleged crime or fraud.

Here, the district court ordered *in camera* review of all privileged documents generated between February 1, 1989, when the alleged scheme began, and July 12, 1991, the date the government executed its search warrant on the Corporation. Yet if, as alleged, the Corporation used its UAE export license to cloak illegal shipments to Iran, the latest possible date for completion of this scheme was March 28, 1990, the date the Department of Commerce issued the Corporation an export license for Iran. The government has alleged no ongoing cover-up after this point. Thus, the district court erred in denying the Corporation's motion to quash with respect to privileged documents created after March 28, 1990. The attorney-client privilege shields these documents from *in camera* inspection, and they should not have been ordered disclosed.

## CONCLUSION

For the foregoing reasons, we affirm the district court's denial of appellant's motion to quash and its order to submit the subpoenaed documents for *in camera* review, but we limit the scope of the order to documents generated between February 1, 1989, and March 28, 1990.

AFFIRMED AS MODIFIED.