## In re WORLDS OF WONDER SECURITIES LITIGATION.

### No. C–87–5491 SC (FSL).

United States District Court, N.D. California.

Nov. 5, 1992.

Glenn Goffin, San Francisco, CA, for plaintiffs.

Kristin Cappel, San Francisco, CA, for Deloitte and Touche.

### ORDER RE DISCOVERY

LANGFORD, Chief Magistrate Judge.

Plaintiffs' Motion to Compel Production of Documents came on for hearing on November 5, 1992. Appearing for plaintiffs was Glenn Goffin, Esq. Appearing for defendant Deloitte and Touche was Kristin Cappel, Esq.

The moving and opposing papers, the argument of counsel and the record in this case having been fully considered and good cause appearing,

IT IS HEREBY ORDERED that the motion is DENIED.

## BACKGROUND

Deloitte, Haskins and Sells (now Deloitte & Touche) ("Deloitte"), WOW's outside accountants, issued reports on WOW's consolidated financial statements for the fiscal years ending March 31, 1986 and March 31, 1987. Financial statements are generally intended to reflect the financial position of a company at a particular time, and report the company's operating results for a preceding, specified period of time.

Deloitte's 1986 and 1987 audit reports on WOW's consolidated financial statements provided that:

> We have examined [WOW's financial statements]. Our examinations were made in accordance with generally accepted auditing standards and, accordingly, included such tests of the accounting records and such other auditing procedures as we considered necessary in the circumstances.
>
> In our opinion, such [financial statements] present fairly the financial position of the Company ... for the years then ended, in conformity with generally accepted accounting principles applied on a consistent basis.

As the report indicates, the measure of Deloitte's performance is generally accepted auditing standards ("GAAS"), and generally accepted accounting principles ("GAAP"). GAAS and GAAP are explicitly defined in authoritative, publicly available pronouncements issued by recognized sources within the industry, principally the American Institute of Certified Public Accountants ("AICPA").

## DOCUMENT REQUEST

Plaintiffs request that Deloitte produce their auditing manuals, in-house documents outlining unique auditing procedures which may be equal to or greater than GAAS or GAAP.

The Third Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws, Common Law and State Law ("the Complaint") alleges a fraudulent scheme and conspiracy by Worlds of Wonder ("WOW"), and certain of its officers and directors, aided and abetted by their outside auditor, Deloitte, to manipulate the price of WOW's common stock and debentures. The defendants allegedly accomplished this fraud by, *inter alia*, manipulating WOW's publicly-reported revenues, accounts receivable, inventory, and reserves. Deloitte served as WOW's independent public accountant throughout the class period, and assisted in the accomplishment of the fraud by auditing WOW's financial statements and issuing "clean" audit opinions, which were disseminated to the market and the investing public.

Plaintiffs believe these documents "may be highly probative of Deloitte's culpability for the wrongdoing alleged." Without access to the documents, plaintiffs are relegated to speculating as to the significance of these obviously relevant materials, which Deloitte's own workpapers show it relied on in conducting the challenged audits. Plaintiffs also require the documents in order properly to understand and evaluate Deloitte's workpapers, which make frequent reference to the manuals.

Defendants refuse to produce the audit manuals and urge the court to deny plaintiffs' motion for three reasons:

(1) The standard by which Deloitte must be judged is GAAS and GAAP ("generally accepted accounting principles"). Plaintiffs do not and cannot argue that Deloitte's manuals create industry-wide norms, help define GAAP, or otherwise alter Deloitte's obligation to conduct its audits in accordance with GAAS. In short, the manuals are not relevant to a determination of Deloitte's liability, if any.

(2) Deloitte's audit manuals are protected trade secrets, and plaintiffs have ignored their burden of showing relevance and necessity.

(3) Compelled disclosure of Deloitte's audit manuals would contravene important public policy considerations, i.e. that a company should not be punished for imposing standards on itself which are higher than those generally followed throughout its industry.

## ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) provides:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 26(c)(7) further provides that a court may order:

that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;

Plaintiffs argue that the audit manuals are relevant because, when compared with the audit workpapers, they would show whether Deloitte followed its own internal procedures in auditing WOW's books. The audit manuals would also help plaintiffs to understand the workpapers. If the audit manuals contain trade secrets, they could be shielded by the protective order in place in this case.

Defendants counter that the audit manuals do not represent the standard in the industry for how audits are conducted: that standard would be GAAS and GAAP. The workpapers show how Deloitte actually conducted the WOW audit and they can be compared with GAAS and GAAP. The audit manuals represent thousands of hours of work and hundreds of thousands of dollars. Deloitte goes to great lengths to protect their secrecy and if they fell into the hands of a competitor, it would be disastrous. Deloitte dismisses the protective order as worthless in this instance. The protective order was designed to protect the workpapers. It permits disclosure to such individuals as plaintiffs' experts, who will of necessity be accountants, most likely competitors of Deloitte. Disclosure of Deloitte's audit manuals to them would put Deloitte at a competitive disadvantage. If the audit manuals were used to measure Deloitte's performance of the audits, it would discourage accountants from developing and applying their own standards which may be stricter than GAAS and GAAP. This would act as a disincentive to them to attempt to achieve the higher standards.

■ To resist discovery under this rule providing for discovery of trade secrets, a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful and if those requirements are met, the burden shifts to parties seeking discovery to establish that disclosure of trade secrets is relevant and necessary to the action. *Centurion Industries Inc. v. Warren Steurer and Associates,* 665 F.2d 323, 325 (10th Cir.1981)

■ Defendant has demonstrated to the court that its audit manuals are a closely-guarded trade secret and their disclosure to competitors probably would be harmful. Plaintiffs have not demonstrated that the audit manuals are relevant and necessary.

The audit manuals do not show how the WOW audit was conducted. Only the workpapers do that. Plaintiffs claim they cannot understand the workpapers without the audit manuals but refer only to a few supposedly mystifying sections to show this. At the hearing, defense counsel presented a lengthy report by plaintiff's accounting expert, Mr. Rossi, in which he never once referred to the audit manuals or a need to refer to the audit manuals in order to analyze the workpapers.

The audit manuals do not establish the standards against which Deloitte's conduct of the WOW audit is to be measured. That standard is established by GAAS and GAAP, publicly disseminated standards recognized throughout the accounting industry.

Defendants dismiss the existing protective order as inadequate to shield the audit manuals from the eyes of Deloitte's competitors. It specifically permits disclosure to expert witnesses, many of whom will be accountants, presumably Deloitte's competitors. Obviously, the accounting experts are the same ones who will be examining the workpapers and comparing their record of how the audit was

done with GAAS and GAAP. They will have to see the audit manuals if these manuals are indeed necessary to understand the workpapers. Deloitte is correct when it says that it would be naive to think that these witnesses will erase the audit manuals from their minds at the close of the case.

█ It is also unfair to use professionals' self-imposed standards, which may exceed industry standards, against them to try to prove fraud. This violates public policy which encourages the highest standards, in order to protect the public.

Both sides quote a number of unpublished cases to show that this or that magistrate or judge ordered audit manuals produced or ordered that they not be produced. What is clear is that it is up to the court's discretion to determine the merits of each individual case. In this case, the circumstances and the law require that the audit manuals not be disclosed and that plaintiff's motion be *denied.*

SO ORDERED.