Gerhard W. GOHLER, IRA, et al., on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Robert L. WOOD, et al., Defendants.

No. 92–C–0181–S.

United States District Court,
D. Utah,
Central Division.

April 19, 1995

Robert C. Schubert, and Marion S. Robertson, San Francisco, CA, Edward F. Habr, Shapiro, Grace & Haber, Boston, MA, David K. Isom, David K. Isom & Associates, Salt Lake City, UT, Scott A. Call and Thomas R. Karrenberg, Anderson & Karrenberg, Salt Lake City, UT, Blake M. Harper, Keith F. Park, Theodore J. Pintar and Steven W. Pepich, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, Steve W. Berman, Hagens & Berman, Seattle, WA, Justine Fischer, Portland, OR, for plaintiffs.

Richard D. Burbidge, Burbidge & Mitchell, Salt Lake City, UT, Jeffrey N. Walker, Rocky Mountain Healthcare, Inc., Bountiful, UT, Randon W. Wilson, Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT, Douglas J. Parry, Parry, Murray, Ward & Moxley, Salt Lake City, UT, Daniel L. Berman and Samuel O. Gaufin, Berman, Gaufin & Tomsic, Salt Lake City, UT, Gary F. Bendinger, Richard W. Casey, Robert A. Peterson, Jeffery Scott Williams, Douglas H. Patton, Giauque Crockett Bendinger & Peterson, Salt Lake City, UT, Barbara A. Mentz, Deloitte & Touche, New York City, Mary T. Huser, Douglas R. Painter, Dale E. Barnes, John P. Halfpenny, McCutchen Doyle Brown & Enersen, San Francisco, CA, Alan L. Sulliven and Kathryn H. Snedaker, Van Cott Bagley Cornwall & McCarthy, Salt Lake City, UT, Cynthia J. Crass, First Security Bank of Utah, N.A., Salt Lake City, UT, Brent V. Manning, Holme Roberts & Owen, Salt Lake City, UT, Glen E. Davies and David W. Schofield, Parsons Davies Kinghorn & Peters, Salt Lake City, UT, Steward M. Hanson, Jr. and J. Michael Hansen, Suitter, Axland & Hanson, Salt Lake City, UT, for defendants.

Vernon L. Hopkinson and Jeffrey L. Silvestrini, Cohne, Rappaport & Segal, Salt Lake City, UT, Rick Cecala, Beus, Gilbert & Morrill, Phoenix, AZ, for movants.

## MEMORANDUM DECISION

SAM, District Judge.

Before the court is plaintiffs' motion to compel the production of documents from defendant Deloitte & Touche (Deloitte). The court, having considered the memoranda submitted by the parties, will rule on the motion without the assistance of oral argument, pursuant to D.Ut. 202(d).

## BACKGROUND

In their second amended complaint (see Complaint, ¶ 236), plaintiffs allege Deloitte, as independent public accountant for Bonneville Pacific Corporation (Bonneville Pacific), issued Independent Auditor's Reports for fiscal years ending April 30, 1985 and April 30, 1986. Moreover, Deloitte's audit opinion dated June 16, 1989 was included in Bonneville Pacific's Prospectus of August 18, 1989. This audit opinion stated Deloitte had audited financial records for Bonneville Pacific and its

subsidiaries for fiscal years ending April 30, 1987, April 30, 1988, and April 30, 1989. Deloitte also issued Independent Auditor's Reports on June 29, 1990, for fiscal years ending April 30, 1989 and April 30, 1990, and on February 26, 1991, for the period ending December 31, 1990. In all of its audit reports, Deloitte asserted it conducted its audits in accordance with generally accepted auditing standards, and the financial statements represented fairly the financial condition of Bonneville Pacific and its companies. However, plaintiffs contend Deloitte's audit reports were false, misleading, and violated generally accepted accounting principles and auditing standards in several respects. *See* Complaint, ¶¶ 237–38.

On June 17, 1994, plaintiffs served Deloitte with their second request for production of documents, seeking all documents, including any audit guides or plans, Deloitte used in any way in its work for Bonneville Pacific. This request encompassed Deloitte's audit practice manuals. Deloitte objected to producing its entire audit manuals but offered to produce those portions of the manuals referenced specifically in its Bonneville Pacific workpapers which have been produced. Plaintiffs found Deloitte's offer unacceptable. Despite several discussions between the parties, in an attempt to resolve their differences pursuant to D.Ut. 204–1(g) (*see* Rule 204–1(g) Certificate of Counsel and Declaration of Theodore J. Pintar), Deloitte has maintained the position that it will not produce its complete audit manuals. Plaintiffs now bring this motion to compel, seeking the production of Deloitte's complete audit practice manuals used in its audits of Bonneville Pacific which refer or relate to the period from January 1, 1987 through the present.

## ANALYSIS

 " '[T]here is no absolute privilege for trade secrets and similar confidential information.' " *Centurion Indus., Inc. v. Warren Steurer and Assocs.,* 665 F.2d 323, 325 (10th Cir.1981) (quoting *Federal Open Mkt. Comm. v. Merrill,* 443 U.S. 340, 362, 99 S.Ct.

2800, 2812, 61 L.Ed.2d 587 (1979)); *accord Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993, 999 (10th Cir.), *cert. denied,* 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965); *Master Palletizer Sys. v. T.S. Ragsdale Co.,* 123 F.R.D. 351, 352 (D.Colo.1988). Rather, to oppose discovery, a party must demonstrate that the information requested constitutes trade secrets, and disclosing such information would be harmful. *See Centurion,* 665 F.2d at 325; *Master Palletizer,* 123 F.R.D. at 352. Once these two requirements are satisfied, the party seeking discovery must demonstrate that the disclosure of the trade secrets is both "relevant and necessary to the action." *Centurion,* 665 F.2d at 325; *accord Master Palletizer,* 123 F.R.D. at 352–53. The district court must then, within its discretion, "balance the need for the trade secrets against the claim of injury resulting from disclosure." *Centurion,* 665 F.2d at 325; *accord Covey Oil,* 340 F.2d at 999; *Master Palletizer,* 123 F.R.D. at 353. If the trade secrets are found to be relevant and necessary, their production under protective order is also within the court's discretion. *See Centurion,* 665 F.2d at 326; *Master Palletizer,* 123 F.R.D. at 353.

 Deloitte asserts its audit manuals constitute proprietary trade secrets. Deloitte argues it has made substantial investments of time and money in creating its manuals which contain distinctive accounting and auditing procedures and methodologies. *See* Declaration of John A. Fogarty, Jr. Deloitte also goes to great lengths to guard the confidentiality of the manuals as they are used internally by its employees. *See id.* Moreover, Deloitte claims disclosing its complete audit manuals would be detrimental to its business. If the manuals become available for its competitors to copy for or adapt to their business, Deloitte contends, it will be placed at a great competitive disadvantage. *See id.*

The court concludes Deloitte's audit practice manuals constitute trade secrets, the unprotected disclosure of which would likely

be harmful.[1] Thus, to prevail in their motion, plaintiffs must show the disclosure of the manuals is both relevant and necessary. Deloitte argues plaintiffs have failed to meet their burden.

### 1. Relevance and Need

█ Rule 26(b)(1) of the Federal Rules of Civil Procedure states, in pertinent part: "Parties may obtain discovery regarding *any matter,* not privileged, which is *relevant to the subject matter involved in the pending action....* The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." (Emphasis added). The United States Supreme Court has interpreted this rule broadly. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978); *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 389, 91 L.Ed. 451 (1974).

As noted above, plaintiffs contend Deloitte audited Bonneville Pacific's financial records for at least fiscal years ending in 1987, 1988, 1989, 1990, and for the period ending December 31, 1990. *See* Complaint, ¶ 236. Plaintiffs allege Deloitte violated section 11 of the Securities Act of 1933 in performing these audits by failing to examine properly the financial statements included in Bonneville Pacific's registration statement. *See, e.g.,* Complaint, ¶¶ 6(d) and 297–303. Plaintiffs also allege Deloitte and one of its partners, defendant Barry Erickson, violated section 10(b) of the Securities Exchange Act of 1934 and rule 10b–5 promulgated thereunder by disseminating false financial reports for Bonneville Pacific, (*see* Complaint, ¶¶ 306–12), with knowledge of or reckless disregard for such falsity. *See, e.g.,* Complaint, ¶¶ 308–09. Thus, pursuant to the standards set forth above, plaintiffs may obtain discovery of Deloitte's Bonneville Pacific audit practice manuals if they are relevant to and necessary for plaintiffs to prove these allegations.

Plaintiffs essentially concede the standards of care applicable to Deloitte's work are generally accepted auditing standards (GAAS) and generally accepted accounting principles (GAAP), recognized industry-wide, not any standards which may be set forth in the manuals. However, plaintiffs assert the manuals were used as guidelines for Deloitte's examination of Bonneville Pacific's financial records and are extensively cross-referenced in Deloitte's workpapers. Plaintiffs, thus, argue they need the audit manuals because the workpapers which have been produced tell only part of the auditing story; the manuals explain the reasons behind the auditors' conduct, contain policies, and will reveal whether a certain procedure should have been, but was not, followed. For example, plaintiffs contend the audit manuals will offer explanatory information concerning Deloitte's risk analysis and fill in apparent gaps encountered in attempting to decipher Deloitte's Bonneville Pacific workpapers. Therefore, plaintiffs argue, only by inspecting the complete audit manuals can they understand Deloitte's interpretations of GAAP and GAAS and ascertain whether it complied with these procedures in incorporating them into its Bonneville Pacific audits.

Deloitte argues that, because its work must be judged by GAAS and GAAP, its audit practice manuals are not relevant to any of plaintiffs' causes of action, and disclosure of the manuals will not lead to the discovery of any relevant evidence. Deloitte

---

1. *See, e.g., Tonnemacher v. Sasak,* 155 F.R.D. 193, 195 (D.Ariz.1994) ("[I]nternal manuals are highly confidential and proprietary trade secrets."); *In re Worlds of Wonder Sec. Litig.,* 147 F.R.D. 214, 216 (N.D.Cal.1992) ("Defendant [Deloitte] has demonstrated to the court that its audit manuals are a closely-guarded trade secret and their disclosure to competitors probably would be harmful."); *Master Palletizer,* 123 F.R.D. at 352 (Accountants' auditing methods are trade secrets within the meaning of Rule 26(c)(7) of the Federal Rules of Civil Procedure.); *Peat, Marwick, Mitchell & Co. v. Creditor's Comm.,* 65 B.R. 886, 887 (N.D.N.Y.1986) (Audit procedures "constitute 'trade secrets' under Rule 26(c)(7)."); *Rosen v. Dick,* [1974–1975 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 94,989 at 97,433 (S.D.N.Y. 1975) ("[I]nternal accounting and auditing manuals ... are properly termed 'trade secrets.' ").

notes the audit manuals do not indicate what Deloitte actually did during its audit. Rather, the Bonneville Pacific workpapers it has produced are the only documentary evidence of how its audits were actually conducted.

Moreover, plaintiffs acknowledge, as does Deloitte, that they are free to depose Deloitte personnel as to how they performed the audit. However, plaintiffs claim their efforts to conduct productive depositions of Deloitte personnel to comprehend how they performed the audits, as well as to cross examine and possibly impeach these witnesses, will be impeded without an opportunity to review the manuals to determine what policies were purportedly the driving force behind the audits.

In *Rosen v. Dick*, [1974–1975 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,989 (S.D.N.Y.1975), the court recognized that internal accounting and auditing manuals are trade secrets. *See id.* at 97,433. Nevertheless, in granting a motion to compel production of internal accounting information, the court acknowledged that to prove fraud, "even measured against generally accepted accounting practices, plaintiff must establish by a preponderance of the evidence that [the accounting firm]'s actions did not meet that standard." *Id.* To accomplish this, as well as to conduct probing depositions of accountants who performed the audit, thus acquiring information which "will have a direct bearing on the outcome of the case," plaintiff had to be aware of the accounting firm's procedures. *Id.* The court, thus, found the need for the information, protected by a restrictive order, outweighed the need to guard trade secrets. *See id.; see also Master Palletizer*, 123 F.R.D. at 353 (Although recognizing possible harm from disclosure, the court found audit policies relevant as they directly related to the claims, and "relevancy is more broadly construed during discovery than at trial.").

██ The language and interpretation of Rule 26(b)(1) indicate that, at least at the discovery stage, the concept of relevance should be construed very broadly. At this point in the case, it is conceivable that Deloitte's internal manuals may lead to discoverable evidence. Moreover, plaintiffs' request to examine the manuals appears directly relevant to their section 11 and section 10(b) claims against Deloitte, which are essentially based upon the quality of Deloitte's Bonneville Pacific audits, as the manuals provided the foundation for those audits. Indeed, although it is basically undisputed that GAAS and GAAP are the applicable standards of care, it appears merely knowing GAAS and GAAP is not enough. Rather, the manuals are needed to provide the basis for determining Deloitte's interpretation of GAAS and GAAP as well as how Deloitte translated those required industry standards into its actual work on behalf of Bonneville Pacific. Additionally, plaintiffs have indicated specific ways in which the audit manuals will provide information necessary in understanding Deloitte's Bonneville Pacific audit procedures and workpapers.

Deloitte further claims the compelled disclosure of its audit manuals would frustrate the public interest in encouraging professionals to develop and maintain standards which exceed those required by the particular industry. Thus, it argues, if the manuals are produced, and evidence indicates Deloitte personnel fell short of whatever standards or procedures they contain, Deloitte would be unfairly held to higher standards, thus discouraging the desirable practice of performing above the required minimum standards. With this argument, Deloitte essentially asks this court to assume, without any showing, that its audit practice manual policies exceed those of GAAS and GAAP. In *Rosen*, the court could not accept this assumption because "[t]hat is the very issue to be tried in this case. Clearly, if some standard, as published, is less stringent than that generally accepted, the relevance of the information is apparent." *Id.* at 97,433.[2] Moreover, the court agrees with plaintiffs that there is just

---

**2.** *But see Worlds of Wonder*, 147 F.R.D. at 217 and *Tonnemacher*, 155 F.R.D. at 195 (Courts assumed that, because self-imposed standards *"may* exceed industry standards," it would be

as great a public policy in full and open disclosure of accounting professionals' services. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 818–19, 104 S.Ct. 1495, 1503–04, 79 L.Ed.2d 826 (1984).

Finally, plaintiffs note that other courts addressing Bonneville Pacific matters have found Deloitte's manuals relevant and necessary and ordered Deloitte to produce them.[3] Deloitte argues the bankruptcy court has broader discovery procedures, pursuant to Rule 2004, and the decisions of the bankruptcy and Utah state courts are, of course, not binding upon this court. However, as plaintiffs' point out, regardless of the bankruptcy court's broad powers under Rule 2004, Rule 26(b)(1) of the Federal Rules of Civil Procedure gives this court broad discretion in determining what constitutes relevant information. Furthermore, although the decisions of the other courts are not binding upon this court, the court, nevertheless, finds them instructive in view of the fact that these other courts have dealt with the same documents under similar, if not identical, circumstances.

Despite a number of unpublished decisions which split on this issue[4], "[w]hat is clear is that it is up to the court's discretion to determine the merits of each individual case." *In re Worlds of Wonder Sec. Litig.*, 147 F.R.D. 214, 217 (N.D.Cal.1992). After carefully reviewing the arguments of both parties, the court is of the opinion plaintiffs

have established the relevance of and their need for Deloitte's audit practice manuals. In view of this ruling, the court must next assess whether the current protective order sufficiently guards trade secrets in Deloitte's audit practice manuals.

### 2. *Confidentiality*

■ Plaintiffs argue the protective order, entered by the court August 26, 1994, provides adequate safeguards for Deloitte's confidential material. This protective order provides that all documents produced by the parties are considered "confidential information." *See id.* at 2. "Confidential information" may be disclosed only to: counsel, the parties, consulting experts, the court, court reporters and reproduction firms, and witnesses and their counsel. *See id.* at 3–5. Plaintiffs note the protective order limits the use of "confidential information" to "purposes necessary for the litigation of claims between and among the parties in this action ... and not for any other purpose, whether business or otherwise." *Id.* at 3. Moreover, before any "consulting experts" may examine any "confidential information," they must sign a "Confidentiality Agreement" whereby they agree to be bound by the dictates of the protective order. *See id.* at 4 and 10. Plaintiffs, thus, contend there are sufficient, existing safeguards to protect the confidentiality of Deloitte's documents.[5] Plaintiffs also argue the Tenth Circuit has compelled the disclosure of confidential trade secrets when

---

"unfair" to use professionals' standards against them.) (emphasis added).

3. *See Portland Gen. Holdings, Inc. v. Deloitte & Touche*, No. 920900386 (3rd Judicial Dist. July 28, 1993) (Summary Decision on Plaintiff's Motion to Compel at 3–4) (Acknowledging that "[a]t the heart of this lawsuit is the financial condition of [Bonneville Pacific] and defendant's knowledge of BP's financial condition," the court concluded Deloitte must produce all audit practice manuals because "[t]his information is relevant to determine and establish a standard of care, scienter, and any improper procedural omissions."); *In re Bonneville Pacific Corp.*, No. 91A–27701 (Bankr.D.Utah Jan. 7, 1993) (order granting motion to compel) (bankruptcy court ordered Deloitte to produce its audit practice manuals), *aff'd sub nom. Deloitte & Touche v. Roger G. Segal, Trustee*, No. 93C–27J (D.Utah Feb. 22,

1993) (order affirming bankruptcy court ruling on production of audit manuals).

4. The court notes both parties have cited a number of unpublished decisions from other jurisdictions which are not technically proper authorities, pursuant to D.Ut. 202(b)(5).

5. *See, e.g., Centurion*, 665 F.2d at 326 & n. 7 (protective order similar to the one in the instant case characterized as "a carefully fashioned protective order to guard against improper disclosure of the secrets"); *In re Hawaii Corp.*, 88 F.R.D. 518, 525 (D.Haw.1980) (court granted motion to compel accountant's personnel files under protective order with provisions similar to those in the present case).

they are relevant and necessary to establish plaintiff's case. *See, e.g., Centurion,* 665 F.2d at 325–26; *Covey,* 340 F.2d at 997–99.

Deloitte responds that the current protective order grants no specific protection for its audit manuals. Furthermore, it argues that, under this order, expert witnesses, including plaintiffs' accounting experts who will likely be Deloitte's competitors, have access to all material produced, jeopardizing Deloitte's competitive standing in the industry. Plaintiffs claim, however, that Deloitte, as a major public accounting firm, is subject to periodic peer reviews in which its competitors may examine, among other items, Deloitte's internal auditing manuals.

Because the protective order limits disclosure of confidential material to those who are necessarily involved in the case, and these parties may use this information only for purposes of litigating this case, excluding any business purpose, the court concludes Deloitte's confidentiality concerns have been addressed adequately. Moreover, plaintiffs have demonstrated the relevance of and their need for Deloitte's complete audit practice manuals. It is, thus, the opinion of the court that any harm to Deloitte resulting from the production of its audit manuals, within the confines of the current protective order, is outweighed by the demand for the manuals in resolving the allegations in this case.

The court, therefore, GRANTS plaintiffs' motion to compel and hereby orders Deloitte to produce the complete audit practice manuals it used for Bonneville Pacific audits, in accordance with plaintiffs' discovery requests and the current protective order.

It is so ordered.