**In re S³ LTD., Debtor.**

**Bankruptcy No. 99–22531–S.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

Dec. 6, 1999.

***Memorandum Opinion and Order Concerning Motion to Quash Subpoena of S³ By Goodman and Company***

STEPHEN C. ST. JOHN, Bankruptcy Judge.

This matter came on for hearing upon the Motion to Quash Subpoena of S³ Ltd. ["S³"] filed by Goodman and Company ["Goodman"]. Management Consulting, Inc. ["Mancon"], a creditor of S³, has filed a claim in this matter representing its prepetition claim against S³ ["Pre-petition Claim"] and a second claim representing its losses as a result of S³'s rejection of certain subcontracts entered into between S³ and Mancon ["Rejection Claim"]. S³ has objected to both of Mancon's claims and has filed a counterclaim against Mancon. In its counterclaim, S³ seeks dam-

ages for certain alleged contractual breaches and fraudulent conduct on the part of Mancon relating to entry into these subcontracts and of alleged breaches of an agreement made by S³ and Mancon in anticipation of the entry into these now rejected subcontracts.

The Rejection Claim filed by Mancon exhibits a report prepared by Goodman which calculates the total Rejection Claim to be in excess of $10,00,000.00. The Rejection Claim was prepared by Mr. Kenneth Bricker of Goodman ["Bricker"]. Prior to issuance of the subpoena to Goodman that is the subject of this hearing, the working materials Bricker used in the Rejection Claim's preparation had been produced to S³.

On October 27, 1999, S³ caused to be issued and served upon Goodman a subpoena that, among other items, required the production of "[a]ll workpapers for the financial statements for Mancon for years 1996–1998." Goodman, on November 2, 1999, filed its objection to the production of materials responsive to this request. Goodman moved to quash this portion of the subpoena on the basis that (i) it requested production of documents and information proprietary to Goodman; (ii) it imposed upon Goodman an undue burden and expense; and (iii) the subpoena, which had as its return date November 3, 1999 at 9:00 a.m., did not provide Goodman with a reasonable period of time within which to comply with the requested production. At the hearing on the Motion to Quash, Goodman asserted, as an additional basis for objection, that the request for workpapers is not calculated to lead to admissible evidence.

At the hearing, Bricker testified that he prepared the Rejection Claim for Mancon and, in doing so, extracted documents from the 1996, 1997 and 1998 Goodman financial statement workpaper files ["Workpapers"]. Bricker also testified that he did not pre-

pare any portion of the 1996, 1997 or 1998 financial statements for Mancon. Mr. Jeffrey L. Karr ["Karr"], a partner at Goodman, testified that he, along with other principals and employees of Goodman, prepared Mancon's 1996, 1997 and 1998 financial statements, and that the Workpapers for these statements would amount to roughly three inches of paper per year—nine inches altogether. Karr asserted that the revelation of the Goodman Workpapers for the financial statements in question would permit competitors access to Goodman's specialized techniques for providing professional services to government contractors. Karr stated that Goodman had developed these techniques over a long period of time and that divulging them would allow Goodman's competitors to avail themselves of these specialized techniques by "reverse engineering" the information contained in the Workpapers. Karr further testified that Goodman had developed manuals, procedures and checklists concerning the provisions of accounting services to their clients, all of which reflect proprietary information of Goodman. Karr objected to the discovery of any of the documents contained within the Workpapers.

■ After the conclusion of the evidence introduced at the hearing, the Court overruled Goodman's objection that the provision of the Workpapers would constitute an undue burden. Notwithstanding that the responsive documents were described as "nine inches" in girth, the Workpapers apparently were already segregated in separate annual files. The Rejection Claim being litigated is in excess of $10,000,000.00; it must be expected that the process to prove or disprove the appropriate amount of this case will be document intensive. Thus, while the amount of Workpapers is extensive, it is not so voluminous as to constitute an undue burden considering the nature of the Rejection Claim.

■ The Court also overruled Goodman's objection that the information sought was not reasonably calculated to lead to admissible evidence. Bricker's testimony was unequivocal that he utilized information derived from the Workpapers in the preparation of the Rejection Claim. Fairness dictates that, in the absence of valid privilege, $S^3$ be permitted to review the source of information that Bricker reviewed and, as a result of his review, derived therefrom portions of the claim calculation upon which Mancon relied. It is doubtless that methodology and information utilized to compile the Rejection Claim will be the subject of extensive evidentiary and testimonial production at the hearing to be conducted on $S^3$'s objection to the Rejection Claim. The standard that the materials for which discovery is sought must be reasonably calculated to lead to admissible evidence easily permits the discovery of the Workpapers upon which Bricker relied, at least in part, in the calculation of the Rejection Claim.

With respect to the objection founded on the proprietary nature of the Workpapers, the Court elected to require the production of the documents for an *in camera* review thereof to permit the Court to better understand the nature of the claimed proprietary interest of Goodman in the Workpapers. The Court found this review to be necessary particularly given Karr's assertion that all of the responsive documents should not be required to be produced because of the resulting betrayal of confidential or proprietary information.

■ In analyzing the obligation of an accountant to surrender his Workpapers, we start with the premise that there is no accountant-client privilege under federal law. *See United States v. Arthur Young & Co.,* 465 U.S. 805, 817–18, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984); *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). Accordingly,

all substantive information contained in accountant's workpapers pertaining to the financial affairs of the accountant's client are proper subjects for discovery. *See Peat, Marwick, Mitchell & Co. v. Creditor's Comm. of Northeast Dairy Coop. Fed'n. Inc.*, 65 B.R. 886, 887 (N.D.N.Y. 1986).

■■■■ This scope of discovery may be limited, however, where an accountant asserts a valid claim for protection of the information for which discovery is sought on the basis of preventing disclosure of a trade secret or confidential commercial information. *Id.* On the issue of when a party may prevent disclosure of such information, Federal Rule of Bankruptcy Procedure 9016 incorporates Federal Rule of Civil Procedure 45, which provides, in pertinent part:

> If a subpoena (i) requires disclosure of a trade secret or other confidential research, development or commercial information ... the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.[1]

Fed.R.Civ.P. 45. While the Federal Rules of Civil Procedure do not expressly define the terms "trade secret" or "confidential commercial information," case law has supplied the definition as "information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D.Nev. 1994). The person asserting confidentiality has the burden of establishing that the privilege applies to a given set of documents. *See id.; see also In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir.1992). The claim must be expressly made and supported by a sufficient description of the nature of the documents, communications or things not produced so as to enable the demanding party to contest the claim. *See id.* To resist discovery, a person must first establish that the

---

1. *Federal Rules of Civil Procedure 26(c) concerning discovery from a party contains a virtually identical provision as Rule 45:*

   (c) **Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

   (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way....

   If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

   Fed.R.Civ.P. 26(c).

   The Advisory Committee comments recognize the mirror provisions of Rule 26(c) with the provisions of Rule 45 concerning the protection of trade secrets and confidential information:

   Clause (c)(3)(B)(i) authorizes the court to quash, modify, or condition a subpoena to protect the person subject to or affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information. It corresponds to Rule 26(c)(7)

   Accordingly, decisions interpreting the reach of the trade secret or confidential information exclusion contained in Rule 26(c)(7) are applicable to interpret the identical provisions of rule 45 and vice versa.

information sought is a trade secret and then demonstrate that its disclosure might be harmful. If those requirements are met, the burden then shifts to the parties seeking discovery to establish that disclosure of trade secret is relevant and necessary to the action. *See Centurion Indus., Inc. v. Warren Steurer and Assocs.,* 665 F.2d 323, 325 (10th Cir.1981); *In re Worlds of Wonder Sec. Litig.,* 147 F.R.D. 214, 216 (N.D.Cal.1992).

■ In considering claims by accountants that their internal materials constitute trade secrets or confidential commercial information pursuant to either Rule 26 or Rule 45, courts apparently have distinguished between internal accounting manuals and accountant workpapers containing substantial amounts of client information. Internal accounting and audit manuals have generally been characterized as being trade secrets and thus confidential information. *See General Elec. Capital Corp. v. Directv, Inc.,* 184 F.R.D. 32, 36 (D.Conn. 1998); *In re Mid American Waste Systems Inc. Sec. Litig.; Bovee v. Coopers & Lybrand,* No. CIV 97–4888(AJL), 1997 WL 1045729 at *2, (D.N.J. Dec. 10, 1997); *Gohler v. Wood,* 162 F.R.D. 691, 693–94 (D.Utah 1995); *Tonnemacher v. Sasak,* 155 F.R.D. 193, 195 (D.Ariz.1994). Many courts have declined to permit discovery of an accounting firm's internal auditing documents except where there is a pending claim against the accounting firm involving propriety of the audit. *See In re CIS Corp. (Deloitte & Touche v. Hassett),* 123 B.R. 488, 490 (S.D.N.Y.1991); *Robin v. Doctors Officenters Corp.,* Nos. 84 C 10798, & 85 C 08913, 1986 WL 14133 at *1–2 (N.D.Ill. Dec. 9, 1986); *Peat, Marwick,* 65 B.R. at 889. Even in certain instances where accountants were named as defendants in the actions in which discovery of internal audit or accounting manuals was sought, courts have declined to order production of such manuals. *See Mid American,* 1997 WL 1045729 at *2;

*Worlds of Wonder,* 147 F.R.D. at 216–17; *Davis v. Coopers & Lybrand,* No. 90 C 7173, 1992 WL 159504 at *1 (N.D.Ill. June 25, 1992); *Tonnemacher,* 155 F.R.D. at 195.

However, certain decisions appear to distinguish the discovery of accountant workpapers that contain relevant substantive financial information concerning a client from the discovery of internal accounting manuals. *Peat, Marwick* recognizes this distinction. There, an accounting firm appealed from an order of the Bankruptcy Court ordering production of financial records of the debtor maintained by its accountant. *See Peat, Marwick,* 65 B.R. at 887. The accountant sought protection against disclosure of its audit workpapers to the creditor's committee in the case and the committee's accountant. *See id.* After an *in camera* inspection of the workpapers, the court distinguished the documents within the workpapers that contained substantive financial information about the debtor and those that contained no information concerning the debtor and reflected proprietary portions of the accounting firm's audit manuals:

> In summary, Peat, Marwick has consented to the production of portions of its audit workpapers which contain information on [the debtor]. The court has identified additional portions for production. Generally the court accepts Peat, Marwick's claim that certain categories of its audit workpapers, as stated in the affidavit of Pat, Marwick's Associate General Counsel, should be protected from discovery because they are proprietary and do not contain substantive information about [the debtor's] operations. However, upon review the court does not agree that all of the documents claimed for protection actually fall within the categories entitled to protection. That is, some of the documents should be produced, at least in part, because they contain information about [the debtor], and therefore are legitimately sought by the Creditor's Committee.

*Id.* at 889. *Worlds of Wonder* holding is similar as to when access to audit manuals and accountant workpapers should be permitted. The court in that case, in determining that audit manuals should not be produced, recognized "[t]he audit manuals do not show how the WOW [Worlds of Wonder] audit was conducted. Only the workpapers do that." *Worlds of Wonder*, 147 F.R.D. at 216. See also *Tonnemacher*, 155 F.R.D., at 194.

The court has conducted an extensive *in camera* review of the Goodman Workpapers. This review reveals the vast majority of these documents reflect substantive financial information relating to Mancon on their face. To the extent any of these documents may, by "reverse engineering" or otherwise, betray any trade secrets or confidential commercial information on the part of Goodman, the reliance on at least a portion of these documents by Goodman to compile the Rejection Claim requires their disclosure to $S^3$. The court finds this need outweighs any propriety concerns on the part of Goodman. A much smaller portion of the documents reviewed reflect general accounting procedures of Goodman and contain no significant or material financial information concerning Mancon. The court ORDERS that these documents, as identified in the attached appendix, may be withheld from production by Goodman to $S^3$ or redacted as subsequently noted. Since the number of documents that the court orders produced is substantially greater than the number not to be produced or to be redacted, the court will identify those documents for which the objection of Goodman is sustained in the attached appendix.

The remainder of the Workpapers not identified in the attached appendix ["Non-privileged Workpapers"] shall be produced by Goodman to $S^3$ within ten (10) days of the entry of this Order. As an additional condition of the production of the Non-privileged Workpapers, the court further ORDERS that any Non-privileged Workpapers produced by Goodman to $S^3$ pursuant to this Order shall be utilized solely for the purposes of preparation of any defenses on the part of $S^3$ to the Rejection Claim and for no other purpose whatsoever. The Non-privileged Workpapers shall not, under any circumstances, be disseminated or distributed to any person other than employees of $S^3$, counsel for $S^3$ or their paraprofessionals, including any attorney or paraprofessional employed by Marcus, Santoro, Kozak and Melvin, P.C., or Kaufman and Canoles, P.C., and any expert retained by any of them. The Non-privileged Workpapers shall not be copied or reproduced in any manner without further order of the court and any expert retained by $S^3$ or its counsel shall not be permitted to review the Non–Privileged Workpapers unless and until each and every expert to whom $S^3$ or its counsel intends to display the Non-privileged Workpapers shall sign, under oath, a statement acknowledging the above conditions of usage of the documents, which statement under oath must be filed with this court prior to the occurrence of any display of the Non-privileged Workpapers. Unless otherwise ordered by the Court, the Non-privileged Workpapers shall be returned intact to Goodman at the conclusion of the hearing on the Objections to the Rejection and the Prepetition Claim. Violation of these conditions of usage of the Non-privileged Workpapers by any person shall subject the violator to possible imposition of sanctions, including a possible finding that the violator is in civil or criminal contempt of court.

The Clerk shall forward a copy of this Memorandum Opinion and Order to Frank J. Santoro, counsel for $S^3$; Peter G. Zemanian, counsel for Goodman and Company, L.L.P.; and to Michael P. Cotter, counsel for Management Consulting, Inc. The Clerk is further directed to return the

Workpapers produced for the *in camera* as counsel for Goodman and Company, review by the Court to Peter G. Zemanian, L.L.P.

## APPENDIX

Documents That May Be Withheld
Or Redacted (Where Indicated) by Goodman [2]

| Identifying Page Number | Description of Document | Basis For Withholding Production |
|---|---|---|
| | **1998 Workpapers** | |
| 14 | Accounting and Auditing Department Manual— Standard Working Paper Index | Proprietary Document Containing No Financial Information |
| 15 | Accounting and Auditing Department Manual— Standard Symbols and Tickmarks | Proprietary Document Containing No Financial Information |
| 16, 17, 20, 23, 25, 26, 27, 28, 29 | Adjusted Trial Balance | Workpaper Reference May Be Redacted |
| 70 | Index | Proprietary Document Containing No Financial Information |
| 177, 178, 179, 180, 181, 182, 183 | State Tax Rate Chart | Contains No Financial Information |
| 201 | Financial Statement Route Sheet | Proprietary Document Containing No Financial Information |
| 240, 241, 241, 242 | Engagement Letter | Proprietary Document Containing No Financial Information |
| 243, 244, 245, 246, 247, 248, 249, 250, 251 | Planning Budget Checklist Of Information And Documents Required For Goodman and Company | Proprietary Document Containing No Financial Information |
| 275, 276, 277, 278, 279, 280 | Client Information Form | Proprietary Document Containing No Financial Information |
| 283, 284, 285, 286 | Review Procedures Checklist | Proprietary Document Containing No Financial Information |

**2.** For assistance in identification of the documents *not* to be produced or redacted as indicated, the court has affixed a sequential number to all Workpapers produced by Goodman for the *in camera* review by the court and has attached a blue tag to the pages which may be withheld by Goodman or redacted where appropriate.

| Identifying Page Number | Description of Document | Basis For Withholding Production |
|---|---|---|
| | **1997 Workpapers** | |
| 2 | Standing Working Paper Index | Proprietary Document Containing No Financial Information |
| 3 | Standard Symbols and Tickmarks | Proprietary Document Containing No Financial Information |
| 16, 17, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31 | Adjusted Trial Balance | Workpaper Reference May Be Redacted |
| 12 | Index | Proprietary Document Containing No Financial Information |
| 192, 193 | Table of State Income Tax Rates | Proprietary Document Containing No Financial Information |
| 231 | Financial Statement Route Sheet | Proprietary Document Containing No Financial Information |
| 273, 274, 275 | Engagement Letter | Proprietary Document Containing No Financial Information |
| 276, 277, 278, 279, 280, 281, 282, 283, 284 | Planning Budget Checklist of Documents Required for Goodman And Company | Proprietary Document Containing No Financial Information |
| 296, 297, 298, 299, 300, 301 | Client Information Form | Proprietary Document Containing No Financial Information |
| 310, 311, 312, 313 | Review Procedures Checklist | Proprietary Document Containing No Financial Information |
| | **1996 Workpapers** | |
| 2 | Standard Working Paper Index | Proprietary Document Containing No Financial Information |
| 3 | Standard Symbols and Tickmarks | Proprietary Document Containing No Financial Information |
| 4, 5, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17 | Adjusted Trial Balance | Workpaper Reference May Be Redacted |

| Identifying Page Number | Description of Document | Basis For Withholding Production |
|---|---|---|
| 106 | Accounting and Auditing Manual Income Tax Workpaper Framework | Proprietary Document Containing No Financial Information |
| 219 | November 21, 1996 Discussion Agenda | Proprietary Document Containing No Financial Information |
| 227 | Financial Statement Route Sheet | Proprietary Document Containing No Financial Information |
| 228 | Goodco AAD Manual (CR–2) 1/1 | Proprietary Document Containing No Financial Information |
| 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280 | Engagement Letter Checklist of Information And Documents Required For Goodman and Company | Proprietary Document Containing No Financial Information |