**OFFICIAL UNSECURED CREDITORS
COMMITTEE OF MEDIA VISION
TECHNOLOGY, INC., Plaintiff,**

v.

**Paul JAIN, et al., Defendants.**

**Nos. C–96–0869 MJJ (EMC),
C–96–1847 MJJ (EMC).**

United States District Court,
N.D. California.

March 31, 2003.

Michael Q. Eagan, Wayne D. Skigen, Jeffrey M. Rollings, Law Offices of Michael Q. Eagan, San Francisco, CA, for Plaintiff.

Timothy P. Crudo, Darius Ogloza, Latham & Watkins, San Francisco, CA, Paul H. Dawes, Latham & Watkins, Menlo Park, CA, Paul C. Jain, Berkeley, CA, Marcus S. Topel, Topel & Goodman, Darryl P. Rains, Marc J. Fagel, Morrison & Foerster LLP, Douglas R. Young, Claudia A. Lewis, Farella Braun & Martel LLP, Walter J. Robinson, William O. Fisher, James K. Lynch, Pillsbury Winthrop LLP, James L. Hunt, Mary T. Huser, Page R. Barnes, Bingham McCutchen LLP, San Francisco, CA, Eugene R. Erbstoesser, Joel E. Bonner, Ernst & Young LLP, Los Angeles, CA, Karen L. Kennard, Stephanie L. Gatens, Bingham McCutchen LLP, San Francisco, CA, Eugene R. Erbstoesser, Joel E. Bonner, Ernst & Young LLP, Los Angeles, CA, for Defendants.

**CORRECTED ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS (Docket No. 361)**

CHEN, United States Magistrate Judge.

Plaintiffs' motion to compel production of Ernst & Young's ("E & Y") audit manual, personnel files and 1993 audit release came on for hearing on February 7, 2003. Having considered the papers filed in support of and in opposition to said motion and the argument of counsel, and good cause appearing therefor, the Court hereby grants in part and denies in part the motion.

In this suit, Plaintiffs (committee of creditors which took an assignment in bankruptcy from Media Vision of claims against directors, officers and professionals employed by Media Vision), assert claims against E & Y (outside auditors of Media Vision), for fraud and aiding and abetting officers fraud and diversion and mismanagement of assets. In prior related actions, a class of Media Vision shareholders and debenture holders filed a series of securities class actions against Media Vision and its shareholders. Discovery in these suits were related and coordinated.

*AUDIT MANUAL*

A similar motion was made by the plaintiff class (no longer part of this case) and sup-

ported by the instant Plaintiffs (creditors' committee) in 1997. Judge Lynch of this Court, after hearing argument raising many of the same points, denied the motion to compel production of E & Y's audit manuals without prejudice. In particular, Plaintiffs argued that the audit manuals, regardless of whether they set a higher or more specific standard than GAAP or GAAS, are relevant to their claim of fraud because any failure to comply with internally established procedures establishes irregularity probative of scienter. Although Judge Lynch's denial was without prejudice, the hearing transcript indicates that Judge Lynch was not persuaded by this argument. While this Court is reluctant to order a result at odds with the reasoning of a prior ruling in the same case, it has the discretion to do so. *In re Airport Car Rental Antitrust Litigation,* 521 F.Supp. 568, 572 (N.D.Cal.1981), *aff'd on other grounds,* 693 F.2d 84 (9th Cir.1982), *cert. denied,* 462 U.S. 1133, 103 S.Ct. 3114, 77 L.Ed.2d 1368 (1983). The Court is firmly convinced that the better authority is represented by the line of cases which holds that audit manuals are discoverable in cases such as this. Moreover, there have been developments since 1997 which counsel in Plaintiffs' favor.

Several factors inform the Court's decision. First, the audit manuals sought—those in existence as of the Media Vision audit in 1993—are now nearly ten years old. E & Y has not submitted any declaration or other evidentiary material demonstrating why, assuming the manuals constituted trade secrets as found by Judge Lynch in 1997, the 1993 manuals are not now so outdated so as to substantially diminish any harm which might result from their current disclosure. E & Y submitted no declaration, for instance, describing how many, if any, of the essential elements of the manuals are still in use.

Even if it were assumed from their general nature that a significant amount of the 1993 editions of the manuals are still current and thus, as most cases recognize, the audit manuals constitute trade secrets, E & Y has not shown how "disclosing such information would be harmful." *Gohler v. Wood,* 162 F.R.D. 691, 693 (D.Utah 1995). Such a show-

ing is particularly lacking if, as indicated below, the Court limits production to those portions of the audit manuals referenced in the Media Vision audit workpapers (including the Audit Planning Memorandum and the Program for General Audit Procedures for the Media Vision audit) and if the production is limited to attorneys' eyes only so as to ensure that potential competitors of E & Y will not have access to the E & Y audit manual, a concern which informed Judge Lynch's decision.

Third, while the cases have gone both ways on the question, (*cf. In re Worlds of Wonder Securities Litigation,* 147 F.R.D. 214 (N.D.Cal.1992) *with Gohler v. Wood, supra,* 162 F.R.D. 691) the Court is persuaded by the sound reasoning of the courts in *Fields v. Oliver's Stores, Inc.,* 1991 WL 44845 (S.D.N.Y.1990) and *Gohler v. Wood,* 162 F.R.D. at 694. Regardless of whether the audit manuals set a higher or lower standard than GAAP and GAAS, if "a certain procedure should have been, but was not, followed" (*Gohler v. Wood,* 162 F.R.D. at 694), those materials may be relevant to show the "auditors acted with *scienter* by conducting the audits in an irregular way." *Fields,* 1991 WL 44845 at *1. To the extent the manuals evidence E & Y's standard or preferred policy and practice, any failure to follow its prescription may be relevant for this reason. While violation of a defendant's standard practices and procedures alone may not be sufficient to prove fraud, *see Hart v. Internet Wire, Inc.,* 145 F.Supp.2d 360, 369–70 (S.D.N.Y.2001), the Ninth Circuit's reasoning in *Provenz v. Miller,* 102 F.3d 1478, 1490 (9th Cir.1996), *cert. denied,* 522 U.S. 808, 118 S.Ct. 48, 139 L.Ed.2d 14 (1997), though not involving *auditor* fraud, strongly suggests that as a general proposition, violation of a firm's own policies may be probative to scienter. Moreover, the logical nexus between procedural irregularity and scienter has been recognized in other contexts. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 267, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) ("Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role" [in possible discrimination].) The Court thus finds *Fields*

and *Gohler* persuasive. The Court notes that subsequent to Judge Lynch's order in 1997, a number of other courts have embraced the reasoning of *Fields* and *Gohler* and ordered the production of audit manuals. *See Sabratek Liquidating LLC v. KPMG LLP*, 2002 U.S. Dist. LEXIS 21858, 2002 WL 31520993 (N.D.Ill.2002); *In re Oxford Health Plans, Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 5817 (S.D.N.Y.2001) (MDL); *In re Mercury Finance Co. of Illinois*, 1999 U.S. Dist. LEXIS 11236, 1999 WL 495903 (N.D.Ill.1999).

E & Y argues that the auditors have already been deposed and have testified that they did not rely on the audit manuals. While the fact that the depositions of the auditors have by now already been completed obviates one rationale for obtaining the audit manual in discovery—to conduct productive depositions of E & Y personnel—the manuals may still be useful "to cross examine and possibly impeach these witnesses" at trial. *Gohler*, 162 F.R.D. at 695.

The fact that apparently none of the auditors testified they looked at or relied upon the audit manuals does not obviate their relevance, at least for discovery purposes. The issue is not simply how the audit was actually conducted, but how it *should* have been conducted and whether, if there were deviations from standard or preferred procedure or practice, any such deviation evidenced a reckless disregard or conscious effort to hide or ignore inaccuracies in the financial reporting of Media Vision. Thus, the significance of what the auditors did or did not do may turn on the content of the audit manuals.

Accordingly, the fact that the stated representations by E & Y of Media Vision's financial condition refer only to compliance with GAAP and GAAS, and not to its internal standards, does not necessarily render the audit manuals irrelevant. Indeed, to the extent the audit manuals constitute E & Y's interpretation and implementation of GAAP and GAAS, the relevance of the audit manuals is magnified. *See Gohler*, 162 F.R.D. at 694 ("only by inspecting the complete audit manuals can they understand Deloitte's interpretations of GAAP and GAAS and as-

certain whether it complied with these procedures in incorporating them into its Bonneville Pacific audits."). In any event, the Plaintiffs' claims here do not merely assert professional negligence wherein GAAP and GAAS standards, rather than internal standards, may be dispositive. They allege a broader theory of fraud under which evidence probative of scienter such as procedural irregularities may be relevant. The Court thus respectfully disagrees with the reasoning of *In re Worlds of Wonder Securities Litigation*, 147 F.R.D. at 214 and its progeny to the extent it focuses entirely on compliance with GAAP or GAAS.

Finally, the Court finds unconvincing the public policy argument advanced by E & Y that the limited disclosure in litigation of audit manuals will deter accounting firms from establishing high internal standards. This argument assumes that accounting firms will give more weight to the speculative risk of litigation (and ensuing compelled disclosure which could result in competitive harm) than to their desire to conduct audits properly and render accurate statements. Defendants have presented no empirical evidence that audit manuals (evidently a standard and important tool of all major accounting firms as evidenced by the number of cases involving them) which play such an instrumental role in assuring quality have been jettisoned or diluted because of such decisions as *Fields* and *Gohler*. In any event, there is a strong countervailing public policy in "full and open disclosure of accounting professionals' services." *Gohler*, 162 F.R.D. at 696.

Accordingly, even if E & Y could demonstrate the 1993 audit manuals constitute trade secrets, under the better reasoned cases, Plaintiffs have demonstrated the manuals are sufficiently relevant and necessary to the action. Moreover, given the restrictions and protections ordered below, the Court concludes that the Plaintiffs' need for the manuals outweighs any claim of injury from the limited and protected disclosure ordered herein. Indeed, at the hearing, counsel for E & Y conceded that limiting disclosure to attorneys' eyes only would eliminate the danger of competitive disadvantage

which might result from permitting an expert who could be a competitor of E & Y to examine the manuals.

### 1993 AUDIT RELEASE

According to E & Y's counsel, the second page of the two page release has already been provided to Plaintiffs. E & Y resists disclosing the first page because it was part of an audit manual. For the reasons stated above, the Court orders that the 1993 Audit Release be disclosed subject to the protections provided herein—it is for attorneys' eyes only.

### PERSONNEL RECORDS

The parties agree that the personnel records of the auditors sought by Plaintiffs contain private information and is subject to the protection of privacy afforded by Article I, Section 1 of the California Constitution. *Harding Lawson Associates v. Superior Court*, 10 Cal.App.4th 7, 12 Cal.Rptr.2d 538 (1992). Plaintiffs have failed to demonstrate a substantial need in this litigation for such files which would outweigh the constitutionally protected privacy interests at stake. Plaintiffs' primary contention is that the files are needed to show how E & Y deliberately placed inexperienced and untrained auditors on the Media Vision audit. But Plaintiffs have had ample opportunity to depose the auditors and inquire into these very issues. Plaintiffs have not presented any evidence suggesting that the files are likely to contain materials which could impeach the auditors's testimonies about their experience or training or indicating *e.g.* the auditors were subject to adverse employment decisions or discipline. Plaintiffs have failed to establish any significant need for the files.

### CONCLUSION

IT IS HEREBY ORDERED THAT Plaintiffs' motion to compel production of E & Y's audit manuals is GRANTED IN PART. E & Y shall produce those chapters of the audit manuals referred to in the Media Vision audit workpapers. The manuals shall be produced for Plaintiffs' attorneys' eyes only. If Plaintiffs' counsel wishes to have an expert review the manuals or any portion thereof, it

shall provide to E & Y's counsel the name and curriculum vitae of said expert and obtain E & Y's advanced approval for disclosure. If any such dispute is not resolved, Plaintiffs' may petition this Court for an order permitting disclosure beyond counsel. If such a motion is brought, the Court will closely examine the risk of any future competitive harm to E & Y.

IT IS FURTHER ORDERED THAT the 1993 Audit Release be produced for Plaintiffs' attorneys' eyes only.

IT IS FURTHER ORDERED THAT Plaintiffs' motion to compel production of personnel files is DENIED.

All documents ordered produced herein shall be produced no later than February 26, 2003.

IT IS SO ORDERED.